Hillsborough-northern judicial district
No. 2002-177

## NEW HAMPSHIRE CIVIL LIBERTIES UNION

v.

## CITY OF MANCHESTER

Argued: January 15, 2003
Opinion Issued: April 30, 2003

*Stein, Volinsky & Callaghan P.A.*, of Concord (*Andru H. Volinsky* on the brief and orally), for the plaintiff.

*City Solicitor's Office*, of Manchester (*Daniel D. Muller, Jr.* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, City of Manchester (city), appeals the Superior Court's (*Brennan*, J.) final decree requiring it to provide the plaintiff, the New Hampshire Civil Liberties Union (NHCLU), access to consensual photographs of people taken over the last five years by the Manchester Police Department (department). We affirm.

The following facts are not in dispute. In April 2000, after learning that the department had a practice of photographing people who were stopped by officers but not arrested, NHCLU, pursuant to the Right-to-Know Law, RSA chapter 91-A, requested information about the practice and access to the photographs. The department denied the request, asserting that the release of the photographs would be an unwarranted invasion of the privacy of the individuals in the pictures, and would interfere with and reveal investigative techniques. Furthermore, the department asserted that it had no tracking or identification system by which to locate and identify all of the requested photographs.

The plaintiff petitioned for disclosure of the requested photographs. After a bench trial, the court granted the petition and ordered the department to provide access to the requested photographs. This appeal followed.

On appeal, the city argues that: (1) imposing a duty to compile records is contrary to *Brent v. Paquette*, 132 N.H. 415 (1989); and (2) releasing the photographs is an unwarranted invasion of privacy and contrary to the purposes of the Right-to-Know Law.

The purpose of the Right-to-Know Law is to "ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2001). The Right-to-Know Law "helps further our State Constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." *Goode v. N.H. Legislative Budget Assistant*, 148 N.H. 551, 553 (2002); *see* N.H. CONST.

pt. I, art. 8. "We resolve questions regarding the [Right-to-Know] law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents. Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly." *Goode*, 148 N.H. at 554 (quotation and citation omitted). The party seeking nondisclosure has the burden of proof. *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 549 (1997).

We note that the Right-to-Know Law requires governmental agencies to maintain public records in a manner that makes them available to the public. *Hawkins v. N.H. Dep't of Health and Human Services*, 147 N.H. 376, 379 (2001). The parties do not dispute that the photographs at issue are records under RSA 91-A:4 (Supp. 2002).

*I. Compilation*

The city argues that to comply with the plaintiff's request for photographs, it would have to compile the records into a new format contrary to the principles set forth in *Brent*. We disagree.

In *Brent*, the plaintiff requested that a school superintendent create a list containing the names of children in the school district, their addresses, and their parents' names. *Brent*, 132 N.H. at 426. The requested information appeared on each student's individual registration cards. The district, however, did not keep the information in a single list; thus there was no public record containing the requested information. *Id.* We held that the Right-to-Know Law "does not require public officials to retrieve and compile into a list random information gathered from numerous documents, if a list of this information does not already exist." *Id.* Because this holding is an exception to disclosure, we will construe it narrowly. *See Goode*, 148 N.H. at 554.

If we construed the *Brent* exception as expansively as the city suggests, the exception would swallow the rule, contrary to the objectives of RSA chapter 91-A. *See Mans v. Lebanon School Bd.*, 112 N.H. 160, 162 (1972). To "compile" is "to collect and assemble (written material or items from various sources) into a document or volume or a series of documents or volumes." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 464 (unabridged ed. 1961). Right-to-Know requests often require a public official to retrieve multiple documents. *See, e.g., N.H. Housing Fin. Auth.*, 142 N.H. at 555-59 (ordering disclosure of multiple documents pertaining to two housing developments); *Mans*, 112 N.H. at 161-64 (affirming disclosure of part of each teacher's contract). While the *Brent* rule shields

agencies from having to create a new document in response to a Right-to-Know request, it does not shelter them from having to assemble existing documents in their original form. *See Hawkins*, 147 N.H. at 379. Here, the plaintiff is requesting a subset of existing public records. Unlike the plaintiff in *Brent*, the plaintiff here is not requesting a new document that does not already exist.

*II. Invasion of Privacy*

The city argues that releasing the photographs would be an unwarranted invasion of the privacy of the individuals depicted in the photographs.

RSA 91-A:5, IV (2001) exempts from production records "whose disclosure would constitute invasion of privacy." We employ a three-step approach to analyzing this issue. *Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 476-77 (1996); *see United States Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 762, 771-73, 776 (1989) (analyzing federal Freedom of Information Act). First, we evaluate whether there is a privacy interest at stake that would be invaded by disclosure. *Nashua*, 141 N.H. at 477. If there is not, the Right-to-Know Law mandates disclosure. *Id.*

Next, we assess the public's interest in disclosure. *Id.* at 476-77. While an individual's motives in seeking disclosure are irrelevant, in the privacy context, disclosure of the requested information should serve the purpose of informing the public about the conduct and activities of their government. *Id.* at 477.

Finally, we balance the public interest in disclosure against the government interest in nondisclosure and the individual's privacy interest in nondisclosure. *Id.* at 476. "When the exemption is claimed on the ground that disclosure would constitute an invasion of privacy, we examine the nature of the requested document . . . and its relationship to the basic purpose of the Right-to-Know Law." *Id.* The party resisting disclosure bears a heavy burden to shift the balance toward nondisclosure. *N.H. Housing Fin. Auth.*, 142 N.H. at 554.

In summary, our review focuses on whether the defendant has shown that the records sought will not inform the public about the department's activities, or that a valid privacy interest, on balance, outweighs the public interest in disclosure. *Id.* at 555. In the absence of disputed facts, we review the trial court's balancing of the public and private interests *de novo. N.H. Housing Fin. Auth.*, 142 N.H. at 555.

The only privacy interest that the defendant asserts is an individual's interest in not being associated unwarrantedly with alleged criminal

activity. While acknowledging that the nature of the police contact is not evident from the photographs, the defendant argues that the public may speculate as to the nature of an individual's contact with the department. Although the defendant correctly asserts that individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity, *see Nashua*, 141 N.H. at 477, that assertion is not relevant here because the pictures at issue were taken with the consent of the subjects, and the trial court explicitly exempted from disclosure photographs that are or were part of police investigations, including pictures of victims, witnesses and suspects. Because the requested photographs were of people the police, in their discretion, chose to encounter rather than who were the subject of a police investigation, no inference about the person's involvement with a crime can logically be drawn. Furthermore, no personal or identifying information such as name, address or date of birth would be provided; nor would disclosure of the photographs include information about when and where the photographs were taken. There was no evidence that disclosure of the group of photographs, as limited by the superior court, would affect on-going police investigations.

Assuming there is a relevant privacy interest at stake, that interest is minimal because the photographs do not reveal intimate details of an individual's life. *See Mans*, 112 N.H. at 164. Finally, we accord less weight to the privacy interests in this case because the photographs at issue would be disclosed as a large group for statistical analysis only, and not for individual publication or dissemination.

Next, we assess what disclosure of these photographs demonstrates about governmental conduct. The plaintiff argues that disclosure of the photographs would reveal information about the department's law enforcement activities. Specifically, the plaintiff contends that the photographs could demonstrate race or gender-based patterns in the department's decisions regarding whom to stop. We agree.

While disclosure of a single photograph would not reveal anything about the operation of the department, *see Reporters Committee*, 489 U.S. at 775 (one person's rap sheet demonstrates nothing about the F.B.I.), the group of records sought by the plaintiff may reveal information about the decisions made by police officers to stop and photograph persons of a certain appearance. As such, the photographs could provide information about the operation of the police department. *Cf. United States v. Barlow*, 310 F.3d 1007, 1011 (7th Cir. 2002) (statistical data useful in racial profiling cases). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the Right-to-Know Law." *N.H. Housing Fin. Auth.*, 142 N.H. at 554 (quotation and brackets omitted).

Finally, we balance the public interest in disclosure against the governmental and individual interests in non-disclosure. The legislature has provided the weight to be given to the public's interest in disclosure. *Nashua*, 141 N.H. at 476. The purpose of the Right-to-Know Law "is to provide the utmost information to the public about what its 'government is up to.'" *Id.* According to the legislature, "Openness in the conduct of public business is essential to a democratic society. The purpose of this chapter is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1. The public has a strong interest in disclosure of information pertaining to its government's activities. *See Nashua*, 141 N.H. at 477.

 Recognizing that the Right-to-Know Law places emphasis on the fullest responsible disclosure, *id.* at 478, we conclude that the city has failed to meet its heavy burden of shifting the balance toward nondisclosure in this case. Any privacy interest in the photographs at issue does not outweigh the public's interest in disclosure. *Cf. Planned Parenthood v. Town Bd.*, 587 N.Y.S.2d 461, 463 (Sup. Ct. 1992) (no unwarranted invasion of privacy in disclosing police department photos of anti-abortion protesters).

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.