Merrimack
No. 2004-343

BRIAN D. LAMY

v.

NEW HAMPSHIRE PUBLIC UTILITIES COMMISSION

Argued: February 9, 2005
Opinion Issued: April 11, 2005

*Orr & Reno, P.A.*, of Concord (*Maria M. Proulx* and *William L. Chapman* on the brief, and *Mr. Chapman* orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the brief and orally), and *Donald M. Kreis*, staff attorney for the New Hampshire Public Utilities Commission, on the brief, for the respondent.

NADEAU, J. The respondent, the New Hampshire Public Utilities Commission (PUC), appeals the decision of the Superior Court (*Lewis*, J.) granting the request of the petitioner, Brian D. Lamy, for an order compelling the PUC to disclose the names and street addresses of certain customers and awarding the petitioner costs under RSA 91-A:8 (Supp. 2004). We affirm in part and reverse in part.

The record supports the following facts. The petitioner is a Bedford resident. In May 2003, the PUC hired a consultant to investigate the quality of electrical service that the Public Service Company of New Hampshire (PSNH) provided in Bedford. The PUC published the consultant's report in August 2003.

On or about August 1, 2003, the petitioner, pursuant to the New Hampshire Right-to-Know-Law, requested that the PUC provide him with copies of "E-1" reports submitted to the PUC by PSNH between July 1, 1999, and August 1, 2003. *See* RSA ch. 91-A (2001 & Supp. 2004); *see also* N.H. ADMIN. RULES, Puc 308.01. Public utilities are required to submit E-1 reports to the PUC quarterly. N.H. ADMIN. RULES, Puc 304.03, 308.01. E-1 reports contain information relating to a utility's follow-up testing upon receipt of a customer's voltage complaint, such as: (1) the nominal voltage and length of test; (2) minutes below or above nominal voltage; (3) the voltage recorded; (4) the present regulation in percent; and (4) the

name and full address of the complaining customer. N.H. ADMIN. RULES, Puc 308.01.

The PUC made the E-1 reports available to the petitioner but redacted the names and street addresses of both residential and business customers. As redacted, the E-1 reports showed the town of each complaining customer.

The petitioner sought a court order compelling the PUC to make the unredacted E-1 reports available to him. Following a hearing, the trial court granted the petitioner's request, and ordered the PUC to disclose the names and addresses of the PSNH customers whose voltage complaints were contained in the E-1 reports. The court ruled that the names and addresses were not exempt from disclosure under RSA 91-A:5, IV (Supp. 2004) as their disclosure did not constitute an invasion of privacy. As the petitioner represented himself, the court did not award him attorney's fees, but did award costs. The court found that it was necessary for the petitioner to bring his lawsuit to obtain the unredacted E-1 reports. On appeal, the PUC does not challenge the trial court's award of costs. Because the trial court did not award attorney's fees and the petitioner has not yet sought attorney's fees on appeal, we do not address the parties' arguments about whether he was or is entitled to such fees.

■ On appeal, the PUC argues that the trial court erroneously weighed the competing interests involved in disclosing the unredacted E-1 reports under the Right-to-Know Law. The interpretation of a statute is ultimately decided by this court. *Union Leader Corp. v. City of Nashua*, 141 N.H. 473, 475 (1996). The ordinary rules of statutory construction apply to our review of the Right-to-Know Law. *Id.* We begin by examining the plain meaning of the words used in the statute. *Id.* We consider legislative history only if the statutory language is ambiguous. *Goode v. N.H. Legislative Budget Assistant*, 148 N.H. 551, 554 (2002). "To advance the purposes of the Right-to-Know Law, we construe provisions favoring disclosure broadly and exemptions narrowly." *City of Nashua*, 141 N.H. at 475. By so doing, we "best effectuate the statutory and constitutional objective of facilitating access to all public documents." *Union Leader Corp. v. N.H. Housing Fin. Auth.*, 142 N.H. 540, 546 (1997). Because exemptions under the Right-to-Know Law are similar to those under the federal Freedom of Information Act (FOIA), we often look to federal decisions construing the FOIA for guidance. *See Mans v. Lebanon School Bd.*, 112 N.H. 160, 162-63 (1972); *see also N.H. Housing Fin. Auth.*, 142 N.H. at 554.

■ The Right-to-Know Law specifically exempts from disclosure "files whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV. This section of the Right-to-Know Law "means that financial information and personnel files and other information necessary to an individual's privacy need not be disclosed." *Mans*, 112 N.H. at 162.

■ We engage in a three-step analysis when considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV. *N.H. Civil Liberties Union v. City of Manchester*, 149 N.H. 437, 440 (2003). First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. *Id.* If no privacy interest is at stake, the Right-to-Know Law mandates disclosure. *Id.*

Next, we assess the public's interest in disclosure. *Id.* Disclosure of the requested information should inform the public about the conduct and activities of their government. *Id.* Finally, we balance the public interest in disclosure against the government interest in nondisclosure and the individual's privacy interest in nondisclosure. *Id.*

■ When, as in this appeal, the facts are undisputed, "we review the trial court's balancing of the public's interest in disclosure and the interests in nondisclosure *de novo*." *City of Nashua*, 141 N.H. at 476. The party resisting disclosure bears a heavy burden to shift the balance towards nondisclosure. *N.H. Civil Liberties Union*, 149 N.H. at 440. We hold that the PUC has met this heavy burden with respect to residential customers, but not with respect to business customers.

We begin by analyzing whether PSNH's business customers have a privacy interest in the nondisclosure of their names and addresses. In its brief, the PUC admits that "the privacy interest of a business customer is not necessarily coextensive with that of a residential customer." The PUC contends that PSNH's business customers have a privacy interest in not disclosing their names and addresses because they "would likely be unaware that [their] communications with [their] utility provider in the course of a private relationship would be disclosed as public records." Whether information is exempt from disclosure because it is private is judged by an objective standard and not by a party's subjective expectations, however. *Cf. Goode*, 148 N.H. at 554 (exemption claimed on confidentiality grounds, not privacy grounds).

■ The PUC makes no further argument concerning PSNH's business customers. Accordingly, we hold that it has failed to establish that these customers have a privacy interest at stake. Absent a privacy interest, the

Right-to-Know Law mandates disclosure of their names and addresses. *See N.H. Civil Liberties Union*, 149 N.H. at 440. We thus affirm this aspect of the trial court's decision.

■ We next address the nature of the privacy interest of PSNH's residential customers. As the petitioner concedes, these customers have a privacy interest in the disclosure of their names and home addresses. *See Brent v. Paquette*, 132 N.H. 415, 427-28 (1989). As we recognized in *Brent*, disclosing a person's name and address implicates that person's privacy rights "because [the disclosure] serves as a conduit into the sanctuary of the home." *Id.* at 428 (quotation omitted).

We are cognizant that the privacy interest of residential customers in this case is weaker than in cases where names and addresses are associated with other private information, such as financial information. *See Sheet Metal Workers Local No. 9 v. U.S. Air Force*, 63 F.3d 994, 997 (10th Cir. 1995). There is only a "modest privacy interest" assigned to an individual's "bare name[ ] and home address[ ]." *FLRA v. U.S. Dept. of Navy, Naval Com. Unit*, 941 F.2d 49, 55 (1st Cir. 1991).

We are cognizant, as well, that individual names and home addresses are often publicly available. *Department of Defense v. FLRA*, 510 U.S. 487, 500 (1994). We believe, however, that a "discernable interest exists in the ability to retreat to the seclusion of one's home and to avoid enforced disclosure of one's [name and] address." *U.S. Dept. of Navy*, 941 F.2d at 55-56. The United States Supreme Court has recognized that individuals have "*some* nontrivial privacy interest" in avoiding the influx of unwanted, unsolicited mail or the telephone calls and visits that could follow from disclosure of their names and home addresses. *FLRA*, 510 U.S. at 501.

The privacy interest at stake concerns the individual's control of information about his or her person. *Id.* at 500. "In our society, individuals generally have a large measure of control over the disclosure of their own identities and whereabouts." *National Ass'n of Retired Federal Emp. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990). This "is evidenced by unlisted telephone numbers, by which subscribers may avoid publication of an address in the public directory, and postal boxes, which permit the receipt of mail without disclosing the location of one's residence." *Id.* (quotation and ellipsis omitted).

"[W]hen we consider that other parties, such as commercial advertisers and solicitors, must have the same access" under the Right-to-Know Law as the petitioner, it becomes "clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant." *FLRA*, 510

U.S. at 501. The Right-to-Know Law "gives any member of the public as much right to disclosure as one with a special interest in a particular document." *City of Nashua,* 141 N.H. at 476 (quotation and brackets omitted). This is why "the motivations of any member of the public are irrelevant to the question of access." *Id.* (quotation, brackets and ellipses omitted). Information that is subject to disclosure under the Right-to-Know Law "belongs to citizens to do with as they choose. . . . As a general rule, if the information is subject to disclosure, it belongs to all." *National Archives and Records v. Favish,* 124 S. Ct. 1570, 1580 (2004).

Having determined that the residential customers have a privacy interest at stake, we next consider the public interest in disclosing their names and home addresses. The public interest that the Right-to-Know Law was intended to serve concerns "informing the citizenry about the activities of their government." *City of Nashua,* 141 N.H. at 477 (quotation omitted). The purpose of the law is "to provide the utmost information to the public about what its government is up to." *Id.* at 476 (quotation omitted). If disclosing the information does not serve this purpose, "disclosure will not be warranted even though the public may nonetheless prefer, albeit for other reasons, that the information be released." *Id.* at 477 (quotation omitted).

Here, disclosure of the names and addresses will not tell the public anything directly about what the PUC "is up to." The E-1 reports themselves describe actions taken by utility companies, *not* the PUC. The names and addresses of residential complainants will enable the public to know who submitted a voltage complaint to PSNH and where the voltage issue occurred. The addition of names and addresses to the E-1 reports will not enable the public to know whether or how the PUC investigated PSNH's response to voltage complaints, or whether the PUC took any action against PSNH because of its response to voltage complaints. The names and addresses will reveal nothing about the PUC's own conduct. *See N.H. Housing Fin. Auth.,* 142 N.H. at 554.

The asserted public interest in disclosing these names and addresses "stems not from the disclosure of the redacted information itself, but rather from the hope that [the petitioner], or others, may be able to use that information to obtain additional information outside the [PUC's] files." *Department of State v. Ray,* 502 U.S. 164, 178 (1991). The public has an interest in the disclosure of the names and addresses solely because of how they can be used by the petitioner, or others, to discover additional information about the PUC. For instance, the petitioner, or others, could use the names and addresses to contact PSNH customers to inquire

further about their voltage complaints and the PUC's investigation of PSNH's response to them. This kind of public interest has been termed a "derivative use." *Id.* at 178 (quotation omitted).

We have not directly addressed whether the derivative use of information, alone, can ever justify release of information about private individuals under the Right-to-Know Law. In *Goode*, we permitted public access to interviews conducted by the State Legislative Budget Assistant because disclosure helped "to ensure accuracy in the audit process by providing the public with an opportunity to evaluate the information collected and verify that it is consistent with the LBA's final audit report." *Goode*, 148 N.H. at 555.

This derivative use of the information, however, was not the sole public interest in disclosure of the interviews. The LBA conducted many of the interviews to obtain information about the effectiveness of the State's Property and Casualty Loss Program. *Id.* The content of the interviews themselves thus shed light directly upon the State Property and Casualty Loss Program and upon how the LBA conducted its audit. *Id.* Disclosing the interviews thus fell squarely within the core purpose of the Right-to-Know Law. *See City of Nashua*, 141 N.H. at 477. Here, by contrast, the sole public purpose served by disclosing the names and home addresses of PSNH customers who filed voltage complaints is the derivative use to which this information could be put.

Federal circuit courts of appeal construing the FOIA disagree as to whether the derivative use of information is a cognizable public interest. *Compare Painting And Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (derivative use is cognizable under FOIA) *with U.S. Dept. of Navy v. Federal Labor Rel. Auth.*, 975 F.2d 348, 355 n.3 (7th Cir. 1992) (to find public interest in disclosure because of derivative use of information would dismantle privacy protections). The United States Supreme Court in *Ray* expressly declined to address the issue. *Ray*, 502 U.S. at 179.

Even those courts that recognize that the derivative use of disclosed information may serve the public interest in being informed about what the government is up to acknowledge that this interest carries little weight. *See HUD*, 936 F.2d at 1303. That names and addresses "might provide leads for an investigative reporter seeking to ferret out what government is up to ... do[es] little more than raise the public interest in disclosure above ... nothing." *Id.* (quotations and brackets omitted).

■ Consistent with *Goode*, we avoid any "categorical rule" that would exclude the derivative use of requested information from consideration. *Ray*, 502 U.S. at 178. We agree, however, with the courts that have held that when the derivative use of information is the *only* public interest in its disclosure, it has little weight. Although there might be some public interest in knowing the names and addresses of residential customers who filed voltage complaints with PSNH, the central purpose of the Right-to-Know Law "is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *U.S. Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 774 (1989). When the sole public interest in disclosing the information is only tangentially related to the central purpose of the Right-to-Know Law, we decline to accord it great weight. *See City of Nashua*, 141 N.H. at 473.

Against this "virtually nonexistent [Right-to-Know Law]-related public interest in disclosure," we weigh the interests of PSNH's residential customers in nondisclosure of their names and home addresses. *FLRA*, 510 U.S. at 500. The public interest in disclosing customer names and addresses so that they may be contacted at home does not outweigh their privacy interest in not being disturbed at home. *See U.S. Dept. of Navy*, 941 F.2d at 58. The petitioner and others have less intrusive means by which to procure the information they seek, including advertising an investigation into voltage complaints made to PSNH and soliciting assistance from town residents. *See Heights Community Congress v. Veterans Administration*, 732 F.2d 526, 530 (6th Cir.), *cert. denied*, 469 U.S. 1034 (1984). Moreover, the petitioner has failed to demonstrate how disclosing these names and addresses will contribute to assessing the PUC's investigations of utility response to voltage complaints. *See Ray*, 502 U.S. at 178.

■ We hold, therefore, that the petitioner's hypothetical assessment of the PUC's performance is mere speculation, and that this public interest in disclosure is outweighed by the privacy interests implicated in this case. *See id.* at 179; *see also Favish*, 124 S. Ct. at 1581 (if information is sought to show that agency acted negligently, requester must put forth "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred").

*Affirmed in part and reversed in part.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.