Rockingham
No. 2010-323

HAMPTON POLICE ASSOCIATION, INC.

v.

TOWN OF HAMPTON

Argued: March 17, 2011
Opinion Issued: April 28, 2011

8

*McKittrick Law Offices*, of North Hampton (*J. Joseph McKittrick* on the brief and orally), for the petitioner.

*Mark S. Gearreald*, of Hampton, by brief and orally, for the respondent.

*Paul G. Sanderson*, of Concord, by brief, for The Local Government Center, as *amicus curiae*.

DALIANIS, C.J. The respondent, Town of Hampton (Town), appeals the orders of the Superior Court (*McHugh*, J.) granting the request for injunctive relief filed by the petitioner, Hampton Police Association, Inc. (Association), and ordering the Town to provide the Association with copies of certain invoices from the Town's outside counsel. The Town contends that the trial court erroneously: (1) ordered the Town's outside counsel, as its agent, to prepare a revised invoice listing entries devoted only to a particular matter; and (2) failed to rule that the narrative descriptions contained in the original and revised invoices were "confidential" under the Right-to-Know Law because they were subject to the attorney-client privilege. *See* RSA ch. 91-A (2001 & Supp. 2010). We affirm in part and reverse in part.

*I. Background*

The record reveals the following facts. On September 2, 2009, counsel for the Association wrote to Frederick Welch, the Town's manager, requesting, pursuant to the Right-to-Know Law, "copies of each and every invoice from any and all Attorneys who have represented the Town or given advice regarding the so-called Probationary Employees' grievance and subse-

quent Arbitration" as well as "the same information with regard to the Petition to Enforce the Arbitrator's Award." In his September 10, 2009 response, Welch advised the Association's attorney "that the invoices from [the Town's outside] attorneys . . . contain confidential detailed billing narratives which are protected by the attorney-client privilege," and, thus, "are excepted from the requirements of the Right to Know Law." Welch further explained that only the August 20, 2008 bill from outside counsel contained time entries that related solely to the probationary employees' grievance, arbitration and subsequent petition to enforce the arbitration award; the remaining invoices addressed "a variety of other legal matters" and were not limited to the dispute in question. Thus, Welch enclosed only the last two pages of outside counsel's August 20, 2008 invoice.

On September 15, 2009, the Association's counsel sent the Town's attorney a letter explaining that his "request was for the time and monies spent by the Town on the Arbitration and subsequent Superior Court Appeal," and that he was "not requesting any other information, including possible privileged" information. The Association's counsel suggested that the Town "redact any information that it believes is privileged," and observed that "[t]he amount of money spent by the Town is not privileged and is the proper subject of [his] request." In a September 22, 2009 letter, counsel for the Town replied that the Town did not "have any documents beyond those that have already been provided [to the Association's attorney] that segregate out the time and charges on [the grievance, arbitration and petition to enforce arbitration award at issue]." On September 30, 2009, the Association brought the instant petition for injunctive relief, asking the trial court to, among other things, order the Town to produce the requested information.

The trial court held a hearing on the matter on January 14, 2010, at which Town counsel reiterated that outside counsel's invoices generally did not identify the work performed by case. Town counsel provided the court with outside counsel's invoices for the relevant time period for *in camera* review, explaining that thirty-four of the sixty-nine entries concerned only the matter for which the Association sought information, but that the remaining thirty-five entries concerned multiple matters. The Town argued that all of the descriptive narratives in the invoices were privileged from disclosure by the attorney-client privilege.

Following its *in camera* review of the invoices, the trial court ruled that the Association was "entitled to receive copies of bills which reflect simply the work done on the matters at issue, for example telephone conversation with Town manager, without the specifics of their discussion, along with an accompanying dollar amount for the services rendered." The court ordered the Town to photocopy the thirty-four entries that were devoted to the

matter for which the Association sought information. For the remaining entries, the court ordered the Town's outside counsel, as the Town's agent, to "approximate how many of the entries were devoted to the subject matter at issue and forward a revised bill to [the Association's] counsel listing the general subject matter and amount approximated for the service." Because complying with its mandates would entail "extra work" by the Town and its outside counsel, the court "elect[ed] not to require the Town to be responsible for any portion of the [Association's] attorney['s] fees in having to file the within petition." *See* RSA 91-A:8, I (2001).

Although the trial court's order obliged the Town's outside counsel only to list the general subject matter and amount approximated for each service, outside counsel's revised invoice contained detailed narratives about the work performed for the Town. Arguing that the detailed narratives were subject to the attorney-client privilege and, therefore, not subject to disclosure, the Town asked the court to be relieved of its obligation to forward the revised invoice to the Association. The trial court denied the Town's request for relief and sent the revised invoice to the Association itself. This appeal followed.

*II. Discussion*

■ Resolving the issues on appeal requires that we interpret the Right-to-Know Law. "The interpretation of a statute, including the Right-to-Know Law, is to be decided ultimately by this court." *N.H. Challenge v. Commissioner, N.H. Dep't of Educ.*, 142 N.H. 246, 249 (1997) (quotation omitted). "The purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." *N.H. Civil Liberties Union v. City of Manchester*, 149 N.H. 437, 438 (2003) (quotation omitted). Thus, the Right-to-Know Law helps further our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted. *Id.*; *see* N.H. CONST. pt. I, art. 8. While the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents. *Lambert v. Belknap County Convention*, 157 N.H. 375, 379 (2008). Therefore, we construe provisions favoring disclosure broadly, while construing exemptions narrowly. *Id.* "We also look to the decisions of other jurisdictions, since other similar acts, because they are *in pari materia*, are interpretively helpful, especially in understanding the necessary accommodation of the competing interests involved." *Id.* (quotation omitted). "When a public entity seeks to avoid disclosure of material under the Right-to-

Know Law, that entity bears a heavy burden to shift the balance toward nondisclosure." *Id.* (quotation and brackets omitted).

*A. Revised Invoice*

The Town first argues that the trial court erred when it required its outside counsel, as its agent, to create a revised invoice for submission to the Association. The Town asserts that by requiring outside counsel to prepare a revised invoice, the trial court violated RSA 91-A:4, VII (Supp. 2010), which states that the Right-to-Know Law should not be construed "to require a public body or agency to compile, cross-reference, or assemble information into a form in which it is not already kept or reported by that body or agency." The Association counters that the trial court's order merely required the Town (through outside counsel acting as the Town's agent) to "create a subset of already existing information." The Association asserts, "All of the information was in one set of documents. The Town had only to redact the non[-]requested information." Thus, the Association contends, contrary to the Town's assertions, the court order did not require the Town to compile data into a format that the Association specifically requested. *See Hawkins v. N.H. Dep't of Health and Human Services*, 147 N.H. 376, 379 (2001).

While the Right-to-Know Law guarantees "[e]very citizen . . . the right to inspect . . . and to copy" all public records "except as otherwise prohibited by statute," RSA 91-A:4, I (Supp. 2010), it specifically does *not* "require a public body or agency to compile, cross-reference, or assemble information into a form in which it is not already kept or reported by that body or agency," RSA 91-A:4, VII. In *Brent v. Paquette*, 132 N.H. 415, 426 (1989), for instance, we held that the Right-to-Know Law "does not require public officials to retrieve and compile into a list random information gathered from numerous documents, if a list of this information does not already exist." The plaintiff in *Brent* had requested a school superintendent to create a list containing the names of children in the school district, their parent's names, and their addresses. *Brent*, 132 N.H. at 426. "[A]lthough the children's names, their addresses, and the names of their parents, appear[ed] on registration cards and attendance records, the requested information ha[d] never been compiled into a single list." *Id.* We held that because a list of the requested information did not already exist, the school superintendent was not required by the Right-to-Know Law to create one. *Id.*

In *Hawkins*, 147 N.H. at 379, we similarly held that the Right-to-Know Law did not require the New Hampshire Department of Health and Human Services (HHS) to create a new document that contained only the information sought by the plaintiff. The plaintiff sought records of dental

services provided to New Hampshire Medicaid recipients under the age of twenty-one and of Medicaid reimbursement payments made to their dental healthcare providers from 1993 to 1998. *Hawkins*, 147 N.H. at 377. We held that HHS could comply with this request by providing the plaintiff with copies of individual Medicaid claims in their original form, which would not entail creating new documents. *Id.* at 379.

█ In *New Hampshire Civil Liberties Union*, 149 N.H. at 439-40, we distinguished *Brent* and its progeny. In that case, the New Hampshire Civil Liberties Union (NHCLU) sought access to consensual photographs that the Manchester Police Department had taken of people who were stopped by officers, but not arrested. *N.H. Civil Liberties Union*, 149 N.H. at 438. We held that requiring the police department to provide the NHCLU with some, but not all, of the photographs, as requested, did not entail compiling records into a new format contrary to *Brent. Id.* at 439-40. We explained, "While the *Brent* rule shields agencies from having to create a new document in response to a Right-to-Know request, it does not shelter them from having to assemble existing documents in their original form." *Id.* at 439-40. Thus, we concluded, requiring the police to provide the NHCLU with "a subset of existing public records" was unlike requiring the police to create "a new document that does not already exist." *Id.* at 440.

The instant case is on all fours with *Brent* and is distinguishable from *New Hampshire Civil Liberties Union*. The record reveals that, as the trial court aptly found, thirty-five of the entries in outside counsel's original invoices "suggest[ed] that the billing was for a myriad of subjects." These thirty-five entries represented time expended on multiple cases, not only those for which the Association sought information. When submitting them to the trial court, the Town highlighted the work by outside counsel on the grievance and arbitration matter at issue, but put a question mark next to the time entry because the Town could not discern how much of the time entry was dedicated to the highlighted work. Accordingly, the original invoices did not enable the Town to provide the Association with figures representing the amount of time outside counsel spent on specific tasks for the grievance and arbitration at issue. Nor could the Town, using the original invoices, provide the Association with figures representing the amount of money the Town spent on each task related to the grievance and arbitration issue. In short, with regard to the thirty-five entries containing information about multiple matters, no document already existed that would provide the Association with the information it sought.

█ Based upon this record, we conclude that the trial court erred when it required the Town, through outside counsel, to create an entirely new document that would provide the Association with the requested informa-

tion. While the Association contends that no new document need have been created, creation of a new document was exactly what the trial court order required. The court specifically ordered outside counsel "to the best of her ability" to "approximate how many of the [thirty-five] entries were devoted to the subject matter at issue and forward a revised bill" to the Association. The revised bill was an entirely new document that the court ordered outside counsel to create. For all of the above reasons, therefore, we hold that the trial court erred when it ordered the Town's outside counsel to create a revised invoice.

### B. Original Invoices

The Town next asserts that the trial court erred when it ordered the Town to photocopy the thirty-four entries in outside counsel's original invoices, which pertained only to the matter for which the Association sought information. The Town contends that the narrative descriptions of the work outside counsel performed were "confidential" within the meaning of RSA 91-A:5, IV (2001), and, therefore, exempt from disclosure, because they were subject to the attorney-client evidentiary privilege.

■ The Right-to-Know Law specifically exempts from disclosure "[r]ecords pertaining to . . . confidential . . . information." RSA 91-A:5, IV. The determination of whether information is confidential for purposes of our Right-to-Know Law is assessed objectively, not based upon the subjective expectations of the party generating that information. *Goode v. N.H. Legislative Budget Assistant*, 148 N.H. 551, 554 (2002). Even if records are deemed confidential, however, they are not *per se* exempt from disclosure. *Id.* "Rather, to determine whether records are exempt as confidential, the benefits of disclosure to the public must be weighed against the benefits of non-disclosure to the government." *Id.* (quotation and brackets omitted). To show that information is sufficiently confidential to justify nondisclosure, the party resisting disclosure must prove that disclosure is likely to: (1) impair the information holder's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. *Id.* This test emphasizes the potential harm that will result from disclosure, rather than simply promises of confidentiality, or whether the information has customarily been regarded as confidential. *Id.* at 554-55. The burden of proving whether information is confidential rests with the party seeking nondisclosure. *Id.* at 555.

In this case, the trial court did not engage in the balancing test described above because it concluded that the Town failed to meet its burden of proving that the narrative descriptions were subject to the attorney-client privilege. We hold that the trial court did not err in this regard.

■ "The common law rule that confidential communications between a client and an attorney are privileged and protected from inquiry is recognized and enforced in this jurisdiction." *Riddle Spring Realty Co. v. State*, 107 N.H. 271, 273 (1966) (quotation omitted). The classic explication of the privilege is: "Where legal advice . . . is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure . . . unless the protection is waived by the client or his legal representatives." *Id.*; *see City Pages v. State*, 655 N.W.2d 839, 844 n.5 (Minn. Ct. App. 2003). New Hampshire Rule of Evidence 502 essentially codifies the common law attorney-client privilege.

The Town argues that detailed descriptive billing entries are *per se* privileged from disclosure under the attorney-client privilege. Although this is an issue of first impression in New Hampshire, courts in many other jurisdictions have rejected such a *per se* rule. *See, e.g., Cypress Media v. City of Overland*, 997 P.2d 681, 693 (Kan. 2000) (affirming trial court's ruling that all narrative statements in attorney fee statements are not *per se* privileged); *City Pages*, 655 N.W.2d at 845 (holding that billing records "are not protected in their entirety" by the attorney-client privilege); *State v. Cherry*, 541 S.E.2d 205, 208 (N.C. Ct. App. 2000) ("Billing records do not automatically fall under the attorney-client privilege . . . ."). As other courts have explained, "[t]ypically, the attorney-client privilege does not extend to billing records," *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999), because such records "ordinarily reveal[] no confidential professional communications between attorney and client," *Maxima v. 6933 Arlington Dev.*, 641 A.2d 977, 984 (Md. Ct. Spec. App. 1994) (quotation omitted).

■ Courts generally agree that billing statements that provide only general descriptions of the nature of the services performed and do not reveal the subject of confidential communications with any specificity are *not* privileged. *Cypress Media, Inc.*, 997 P.2d at 691; *see also Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege."); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 607 (D. Mass. 1992) ("Documents regarding the payment of fees, billing and time expended are generally subject to discovery."); *Tipton v. Barton*, 747 S.W.2d 325, 332 (Mo. Ct. App. 1988) (billing statements that merely identified attorney's preparation of pleadings, phone calls, meetings and discussions without detailed entries that advised, analyzed or discussed privileged communications were not privileged). Based upon the above authority, we decline the Town's

invitation to adopt a *per se* rule that *all* descriptive narratives in attorney invoices to clients are subject to the attorney-client privilege.

■ We hold, however, that the attorney-client privilege *may* apply to information in a billing record that reveals "the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Clarke*, 974 F.2d at 129; *see Chaudhry*, 174 F.3d at 402; *In re Gibco, Inc.*, 185 F.R.D. 296, 299 (D. Colo. 1997); *Maxima*, 641 A.2d at 984; *Hewes v. Langston*, 853 So. 2d 1237, 1248-49 (Miss. 2003) (billing statements that provided "an hour-by-hour rendition of the work performed for a client," including identifying, by name, the people with whom the attorney talked, the topics they discussed, the subjects the attorney researched and the papers he reviewed "necessarily reveal[ed] strategies, confidential communications, and the thought processes behind the representation" and were privileged from disclosure).

■ ■ In the context of the Right-to-Know Law, the party seeking nondisclosure of attorney billing statements because of the attorney-client privilege bears the burden of proof. *See Goode*, 148 N.H. at 555. "A blanket assertion is generally extremely disfavored, and ordinarily the privilege must be raised as to each record so that the court can rule with specificity." *Maxima*, 641 A.2d at 984 (quotation omitted); *see Cypress Media*, 997 P.2d at 693 (parties claiming that narrative statements in attorney fee statements are privileged must show application of privilege to particular narrative statements). In this case, the Town did not specifically identify to the trial court the narratives it claimed were privileged, but rather urged the court to find that all of the narratives were privileged. In light of our ruling, we hold that the trial court did not err by rejecting this request.

> *Affirmed in part; and reversed in part.*

DUGGAN, HICKS and LYNN, JJ., concurred.