NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2020-0563

SAMUEL PROVENZA

v.

TOWN OF CANAAN

Argued: October 20, 2021
Opinion Issued: April 22, 2022

Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for the plaintiff.

Town of Canaan, filed no brief.

American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Henry R. Klementowicz orally), for the intervenor, Valley News.

Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Gregory V. Sullivan, on the brief) for Union Leader Corporation and New England First Amendment Coalition as amici curiae.

MACDONALD, C.J.  The plaintiff, Samuel Provenza, formerly employed as a police officer by the defendant, Town of Canaan (Town), appeals an order of the Superior Court (Bornstein, J.) that: (1) denied his petition for declaratory judgment and "request for temporary and permanent injunctive and other relief"; and (2) granted the cross-claim of the intervenor, the Valley News. Provenza sought to bar public disclosure of an investigative report commissioned by the Town as a result of a motor vehicle stop in which he was involved while still employed by the Town as a police officer; the Valley News sought release of the report under RSA chapter 91-A, the Right-to-Know Law. See RSA ch. 91-A (2013 & Supp. 2021).  We affirm.

## I. Background

We summarize the pertinent facts found by the trial court or supported by the record.  On November 30, 2017, Provenza was involved in a motor vehicle stop that received media coverage in the Upper Valley.  Provenza was responding to a call received by police dispatch about a suspicious vehicle following a town school bus.  He did not activate the camera in his cruiser before responding.  When he arrived at the location of the bus, he observed a vehicle closely following the bus and initiated a traffic stop.  The driver explained that she was following the bus because her daughter had been having issues with the school bus operator.  When Provenza attempted to arrest the driver of the vehicle, she physically resisted.

The driver subsequently filed a formal complaint against Provenza in which she alleged that he had used excessive force.  The Town commissioned Municipal Resources, Inc. to investigate the encounter.  Municipal Resources filed a report (Report) with the Town.  In February 2019, the Valley News filed a Right-to-Know Law request seeking disclosure of the Report.  The Town denied the request, citing the "internal personnel practices" exemption set forth in RSA 91-A:5, IV (2013) and this court's opinion in Union Leader Corp. v. Fenniman, 136 N.H. 624 (2007).

In June 2020, the Valley News renewed its request following our decisions in Union Leader Corp. v. Town of Salem, 173 N.H. 345 (2020), and Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325 (2020).  The Town informed Provenza of the request and he then filed this lawsuit against the Town seeking declaratory and injunctive relief under a variety of theories to prevent the Town from releasing the Report.  The Valley News filed a motion to intervene, which the trial court granted.  The Valley News then filed an objection to Provenza's request for injunctive relief and a cross-claim seeking a ruling that the Report is subject to disclosure under the Right-to-Know Law. The Valley News also argued that, because Provenza was not a "person aggrieved" under RSA 91-A:7 (Supp. 2021), he did not have standing to bring this action.

In September 2020, the trial court held a hearing during which counsel for Provenza, the Town, and the Valley News participated. At that hearing, the parties agreed that the order to be issued by the trial court would serve "as a final adjudication on the merits of both [Provenza]'s requests for declaratory judgment and for preliminary and permanent injunctions and on the merits of Valley News's crossclaim."

In its order, the trial court "assume[d] without deciding that [Provenza] is a 'person aggrieved' within the meaning of RSA 91-A:7," and "further rule[d] that [Provenza] has standing to maintain this action under RSA 491:22 and RSA 498:1." After a detailed discussion of the analysis to be applied when determining whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV, see Union Leader Corp. v. Town of Salem, 173 N.H. 345, 355 (2020), the court concluded that the Report was subject to disclosure under the Right-to-Know Law. The Town requested that certain medical information, license plate numbers, and the names of minors be redacted from the Report. The Valley News did not object. The trial court agreed that the information should be redacted, concluding that the privacy interest in this information outweighed any public interest. Provenza then filed this appeal.

## II. Standard of Review

We defer to the trial court's findings of fact if they are supported by the evidence and are not erroneous as a matter of law. Town of Lincoln v. Chenard, 174 N.H. 762, 765 (2022). We review the trial court's interpretation of statutes, including the Right-to-Know Law, de novo. 38 Endicott St. N., LLC v. State Fire Marshall, 163 N.H. 656, 660 (2012); N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 652 (2020). We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives. N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 653. Accordingly, we construe provisions favoring disclosure broadly, while construing exemptions restrictively. Id. When the facts are undisputed, we review the trial court's balancing of the public interest in disclosure and the interests in nondisclosure de novo. N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 111 (2016). The party resisting disclosure bears a heavy burden to shift the balance toward nondisclosure. Id.

## III. Analysis

The Right-to-Know Law provides: "Any person aggrieved by a violation of this chapter may petition the superior court for injunctive relief." RSA 91-A:7. The Valley News argues that Provenza is not a "person aggrieved" under this statute. The Valley News further contends that the exemptions set forth in the Right-to-Know Law do not create statutory privileges that can be invoked to

prevent a public body from disclosing information. It argues that exemptions in the Right-to-Know Law "merely provide a license to a public body to withhold information" — they do not prevent the public body "from voluntarily disclosing any records, even if they are exempt." Thus, the Valley News asserts, Provenza lacked standing to bring this action.

In this case, the trial court granted the motion to intervene filed by the Valley News. The Valley News then filed its claim against the Town pursuant to RSA 91-A:7 in which it sought a ruling that the Report is a public record that must be made available for inspection by the public under RSA chapter 91-A. The trial court's order reflects that Provenza's petition and the Valley News' claim were considered together at a hearing on September 15, 2020, with agreement by the parties that the order of the trial court resulting from that hearing would act as a final adjudication on the merits of both Provenza's petition and the Valley News' Right-to-Know request.

In its order addressing whether disclosure of the Report would constitute an invasion of privacy under RSA 91-A:5, IV, the trial court determined that Provenza, "as the party opposing disclosure," bore the heavy burden of demonstrating that the materials should not be disclosed. See Union Leader Corp. v N.H. Housing Fin. Auth., 142 N.H. 540, 554 (1997) (placing burden on the private developer opposing release by the New Hampshire Housing Finance Authority of documents sought by two newspapers pertaining to developer's housing developments). Thus, Provenza was treated as a party in the proceedings in the claim filed by the Valley News. Accordingly, we conclude that he was entitled to appeal the order granting the Valley News' request. See id. at 544-45 (deciding appeal filed by private developer of order requiring disclosure of documents under Right-to-Know Law); cf. Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 330 (2020) (where newspaper sought copy of arbitration decision involving former police officer and City answered that it did not object to release of the decision, Union that represented officer allowed by trial court to intervene in order to oppose newspaper's Right-to-Know Law petition). Provenza is able to raise all of his arguments under the Right-to-Know Law in his appeal from the grant of the Valley News' request. Therefore, given the specific procedural history of this case, we need not decide whether he was a "person aggrieved" under RSA 91-A:7.

We have not yet addressed whether RSA 91-A:7 provides a remedy for, and grants standing to, an individual who seeks to prevent disclosure of information pursuant to the Right-to-Know Law. Compare Campaign for Accountability v. CCRF, 815 S.E.2d 841 (Ga. 2018) (holding that parties with an interest in nondisclosure of public records pertaining to them may pursue a lawsuit to seek compliance with the state Open Records Act), and Beckham v. Bd. of Educ. of Jefferson Cty., 873 S.W.2d 575 (Ky. 1994) (holding that a party affected by the decision of a public agency to release records pursuant to state Open Records Act had standing to contest the agency decision in court), with

4

Chrysler Corp. v. Brown, 441 U.S. 281 (1979) (holding that federal Freedom of Information Act does not provide a remedy for one who seeks to prevent disclosure), and R.I Federation of Teachers v. Sundlun, 595 A.2d 799 (R.I. 1991) (holding that state Access to Public Records Act does not provide a reverse remedy to prevent disclosure). The legislature may wish to consider whether clarification as to who is entitled to seek relief under RSA 91-A:7 is warranted.

We now turn to the question of whether the Report is subject to release under the Right-to-Know Law. The purpose of RSA chapter 91-A "is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2013). We note that no party argues that the Report is not a governmental record. See RSA 91-A:1-a, III (2013). The legislature has recognized that certain governmental records are exempt from disclosure under this chapter. See RSA 91-A:4, I (2013) (every citizen has right to inspect governmental records "except as otherwise prohibited by statute or RSA 91-A:5").

Although, in his brief, Provenza lists fifteen questions "presented for review," we conclude that determining whether the Report is subject to disclosure requires resolution of the following: (1) whether RSA 105:13-b bars disclosure; (2) whether RSA 516:36 and/or State Personnel Rules bar disclosure; and (3) whether RSA 91-A:5, IV bars disclosure.

We begin by setting forth the language of RSA 91-A:5, IV in its entirety. Provenza relies upon the emphasized language to support his claim that the Report is exempt.

> IV. Records pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute invasion of privacy. Without otherwise compromising the confidentiality of the files, nothing in this paragraph shall prohibit a public body or agency from releasing information relative to health or safety from investigative files on a limited basis to persons whose health or safety may be affected.

Provenza also argues that the trial court erred by failing to properly consider RSA 105:13-b and RSA 516:36, II in its analysis. RSA 105:13-b (2013), entitled "Confidentiality of Personnel Files," provides:

> I. Exculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the

5

defendant. The duty to disclose exculpatory evidence that should have been disclosed prior to trial under this paragraph is an ongoing duty that extends beyond a finding of guilt.

II. If a determination cannot be made as to whether evidence is exculpatory, an in camera review by the court shall be required.

III. No personnel file of a police officer who is serving as a witness or prosecutor in a criminal case shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination as to whether it contains evidence relevant to the criminal case. Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases. The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer.

RSA chapter 516, "Witnesses," is found in Title LIII of the Revised Statutes Annotated, which is entitled "Proceedings in Court." RSA 516:36 (2021) provides:

**516:36 Written Policy Directives to Police Officers and Investigators.**

I. In any civil action against any individual, agency or governmental entity, including the state of New Hampshire, arising out of the conduct of a law enforcement officer having the powers of a peace officer, standards of conduct embodied in policies, procedures, rules, regulations, codes of conduct, orders or other directives of a state, county or local law enforcement agency shall not be admissible to establish negligence when such standards of conduct are higher than the standard of care which would otherwise have been applicable in such action under state law.

II. All records, reports, letters, memoranda, and other documents relating to any internal investigation into the conduct of any officer, employee, or agent of any state, county, or municipal law enforcement agency having the powers of a peace officer shall not be admissible in any civil action other than in a disciplinary action between the agency and its officers, agents, or employees. Nothing in this paragraph shall preclude the admissibility of otherwise

relevant records of the law enforcement agency which relate to the incident under investigation that are not generated by or part of the internal investigation. For the purposes of this paragraph, "internal investigation" shall include any inquiry conducted by the chief law enforcement officer within a law enforcement agency or authorized by him.

## A. RSA 105:13-b

Provenza argues that RSA 105:13-b creates an exception to the Right-to-Know Law that applies to the Report. However, by its express terms, RSA 105:13-b "pertains only to information maintained in a police officer's personnel file." N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 656. As we stated in N.H. Center for Public Interest Journalism, "[h]ad the legislature intended RSA 105:13-b to apply more broadly to personnel information, regardless of where it is maintained, it would have so stated." Id. Here, the trial court found that "there is nothing in the record to suggest that the Report is contained in or is a part of [Provenza's] personnel file." On appeal, Provenza has not demonstrated that this finding is unsupported by the evidence or erroneous as a matter of law. Accordingly, the Report is not exempt from disclosure under the Right-to-Know Law by RSA 105:13-b.

Provenza also relies upon Pivero v. Largy, 143 N.H. 187 (1998), which considered an officer's right under RSA 275:56 (1987) to obtain a copy of an internal investigation that concluded that complaints against the officer were unfounded. After concluding that the records were not covered by that statute, we observed in dicta that "[u]ntil an internal investigation produces information that results in the initiation of a disciplinary process, public policy requires that internal investigation files remain confidential." Pivero, 143 N.H. at 191. The public policy considerations included "instilling confidence in the public to report, without fear of reprisal, incidents of police misconduct to internal affairs," and preventing disclosure of confidential internal affairs matters that could seriously hinder an ongoing investigation or future law enforcement efforts. Id.

In Pivero, we observed that police internal investigative files were categorically exempt from disclosure under RSA 91-A:5, citing Union Leader Corp. v. Fenniman, 136 N.H. 624 (1993). Fenniman had so held, based upon the court's belief that the legislature had "plainly made its own determination" that such documents should be categorically exempt. Fenniman, 136 N.H. at 627. Accordingly, we had no cause to consider the appropriate analysis to apply under the Right-to-Know Law, as that issue had been previously settled in Fenniman.

In Union Leader Corp. v. Town of Salem, 173 N.H. 345 (2020), we overruled Fenniman to the extent that it decided that records are categorically

exempt from disclosure under the Right-to-Know Law instead of being subject to a balancing test to determine whether they are exempt from disclosure. Thus, the statement in Pivero that police internal investigative files were categorically exempt from disclosure under RSA 91-A:5, which was supported by citation to Fenniman, is no longer good law. Understood in that light, the public policy considerations identified in Pivero may still support maintaining the confidentiality of internal investigation files, see Union Leader Corp., 173 N.H. at 355 (noting one test to determine whether material is "confidential" is whether disclosure is likely to impair the government's ability to obtain necessary information in the future), but no longer are such files categorically exempt from disclosure under the Right-to-Know Law. Establishing that records are "confidential" by itself does not result in their being exempt from disclosure under the Right-to-Know Law — rather, that determination involves the three-step analysis that the trial court undertook in this case. See id.

### B. RSA 516:36 and State Personnel Rules

Nor does RSA 516:36 support Provenza's request for relief. The language of this statute makes clear that it governs information sought for use in the course of civil litigation. Petition of N.H. Div. of State Police, 174 N.H. 176, 185 (2021). It is limited to questions of admissibility. As the Valley News notes in its brief, information can be both inadmissible in court under RSA 516:36, and public under the Right-to-Know Law. Contrary to Provenza's argument, we agree with the trial court that because RSA 516:36 governs admissibility, it "has no bearing on the Right-to-Know analysis."

Provenza also argues that, because he is currently employed as a State Trooper with the New Hampshire Department of Safety, rules adopted by the New Hampshire Division of Personnel that require the State to keep investigations confidential and separate from a State employee's personnel file unless discipline is issued prevent disclosure of the Report. See N.H. Admin. R. Per 1501.04. We disagree. Given that there is no dispute that the Report was commissioned by the Town to investigate actions taken by Provenza while employed by the Town and also prepared during his employment with the Town, we conclude that the State's personnel rules also do not apply. See N.H. Admin. R. Per 101.02.

### C. RSA 91-A:5, IV

Turning to RSA 91-A:5, IV, as we earlier observed, the purpose of the Right-to-Know Law is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people. RSA 91-A:1. "The party resisting disclosure bears a heavy burden to shift the balance toward nondisclosure." Union Leader v. N.H. Housing Fin. Auth., 142 N.H. at 554 (quotation omitted). We have previously recognized that an "expansive construction" of the language in RSA 91-A:5, IV

8

that establishes exemptions would allow "the exemption to swallow the rule and is inconsistent with the purposes and objectives of the right-to-know law." Mans v. Lebanon School Bd., 112 N.H. 160, 162 (1972); see Herron v. Northwood, 111 N.H. 324, 327 (1971) (observing that the legislature "has placed a high premium on the public's right to know").

Here, Provenza contends that the trial court erred in its balancing of the public right to access governmental information against his privacy interests. Courts must engage in a three-step analysis when considering whether disclosure of public records constitutes an invasion of privacy under RSA 91-A:5, IV. Union Leader Corp. v. Town of Salem, 173 N.H. at 355. This balancing test applies to all categories of records enumerated in RSA 91-A:5, IV. See id. at 357; N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. at 659. First, the court evaluates whether there is a privacy interest that would be invaded by the disclosure. Union Leader, 173 N.H. at 355. Second, the court assesses the public interest in disclosure. Id. Third, the court balances the public interest in disclosure against the government's interest in nondisclosure and the individual's interest in nondisclosure. Id. On appeal, in the absence of disputed facts, we review the trial court's balancing of the public interest in disclosure and the interests in nondisclosure de novo. Union Leader v. N.H. Housing Fin. Auth., 142 N.H. at 555.

We conclude that Provenza's privacy interest here is not weighty. As the trial court explained, the Report does not reveal intimate details of Provenza's life, see N.H. Civil Liberties Union v. City of Manchester, 149 N.H. 437, 441 (2003), but rather information relating to his conduct as a government employee while performing his official duties and interacting with a member of the public. Cf. Lamy v. N.H. Pub. Utils. Comm'n, 152 N.H. 106, 113 (2005) (noting that purpose of Right-to-Know Law is to ensure that government's activities be open to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the government be so disclosed); Kroeplin v. Wis. Dep't of Natural Resources, 725 N.W.2d 286, 301 (Wis. App. 2006) (stating that when an individual "becomes a law enforcement officer, that individual should expect that his or her conduct will be subject to greater scrutiny. That is the nature of the job.").

With respect to the government's interest in nondisclosure, we first note that the Town makes no argument on appeal that it has any interest in nondisclosure. Indeed, the Town has filed neither a brief nor a memorandum of law in this court. Rather, before the trial court, the Town requested that certain information — specifically, medical information, license plate numbers, and the names of minors — be redacted from the Report. Without objection, the trial court agreed that those redactions would be made. To the extent that Provenza argues that the government has an interest in nondisclosure because disclosure will have a chilling effect on future investigations, we agree with the Valley News that Provenza has not carried his burden of demonstrating that

9

disclosure, in light of the facts of this case, is likely to have any such chilling effect.  Cf. Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 556 (2002) (stating that there was no evidence establishing a likelihood that disclosure would lead auditors to refrain from being candid and forthcoming).

As for the public interest in disclosure, we conclude that it is significant. The public has a substantial interest in information about what its government is up to, see Lamy, 152 N.H. at 111, as well as in knowing whether a government investigation is comprehensive and accurate, see Reid v. N.H. Attorney Gen., 169 N.H. 509, 532 (2016).  In balancing the interests in disclosure and nondisclosure, the trial court concluded that Provenza failed to carry his heavy burden of shifting the balance toward nondisclosure.  After considering all of the arguments of the parties, we reach the same result.

Lastly, we note that Provenza argues that disclosure of the Report will violate his right to procedural due process.  We conclude that this argument lacks merit, and warrants no further discussion.  See Garrison v. Town of Henniker, 154 N.H. 26, 35 (2006).  Accordingly, the decision of the trial court is affirmed.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.