**WILMA MARSH-MONSANTO INDIVIDUALLY, and as a St. Thomas CANDIDATE for Senate-At-Large, DIANE MAGRAS, INDIVIDUALLY, and as a St. Thomas CANDIDATE for Board of Elections, HARRIET MERCER, INDIVIDUALLY, and as a St. Thomas CANDIDATE for Board of Elections, Plaintiffs**

**v.**

**ST. THOMAS-ST. JOHN BOARD OF ELECTIONS, CAROLINE FAWKES, as SUPERVISOR OF ELECTIONS, ALECIA WELLS as CHAIRWOMAN OF THE JOINT BOARD OF ELECTIONS, ARTURO WATLINGTON, JR., as CHAIR OF ST. THOMAS/ST. JOHN BOARD of ELECTIONS, and NEFREDIEZHA BARBEL as DEPUTY SUPERVISOR OF ELECTIONS FOR ST. THOMAS/ST. JOHN, Defendants**

Case No. ST-13-CV-211

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

February 5, 2014

43

44

WILMA MARSH-MONSANTO, Plaintiff, St. Thomas, USVI, *Pro se*.

DIANE MAGRAS, Plaintiff, St. Thomas, USVI, *Pro se*.

HARRIET MERCER, Plaintiff, St. Thomas, USVI, *Pro se*.

ARIEL M. SMITH-FRANCOIS, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Defendants*.

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(February 5, 2014)

**THIS MATTER** is before the Court on Plaintiffs' motion to hold Defendants in contempt of court for failing to comply with the November 25, 2013, Order of this Court which provided certain permanent and mandatory injunctive relief. Plaintiffs contend that Defendants failed to make certain documents available for inspection and copying as required by said Order. Defendants counter that they have complied with the Order. On January 10 and 16, 2014, Plaintiffs filed two additional motions, and Defendants responded to one of them. For the reasons set forth below, Plaintiffs' contempt request will be denied.[1] The Court will also deny Plaintiffs two referenced motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs Wilma Marsh-Monsanto, Diane Magras, and Harriet Mercer, all of whom are self-represented, filed this civil action on May 9, 2013.[2] Plaintiff Marsh-Monsanto, who presently is an elected member of Defendant Board of Elections for the District of St. Thomas and St. John (hereinafter the "Board"), unsuccessfully ran for the office of Senator-at-Large in the November, 2012 general election. Plaintiffs Magras and Mercer unsuccessfully ran for seats on the Board in the November, 2012 general election. In their complaint, Plaintiffs contend that Defendants failed to allow them to inspect and copy several documents related to the November, 2012 general election in the St. Thomas-St. John District. In addition to the Board, Defendants sued two elected members of the Board, the Supervisor of Elections, and the Acting Deputy Supervisor of

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law required by the procedural rules of this Court. *See* SUPER. CT. R. 7; FED. R. CIV. P. 52(a).

[2] The Court has jurisdiction over this civil action pursuant to title 4, section 76(a) of the Virgin Islands Code, as amended.

Elections for the District of St. Thomas and St. John.[3] Plaintiffs sought injunctive relief directing Defendants to allow access to, and inspection and copying of, various documents related to the November, 2012 general election in the District of St. Thomas and St. John.

Defendants failed to answer the complaint, and the Court entered defaults against all Defendants, except the Board, which had not been properly served with process, on September 10, 2013.[4] On October 4, 2013, the defaulting Defendants filed their "Motion to Vacate Entry of Default and Motion to Dismiss Based on Mootness" and Plaintiffs filed an opposition thereto. The Court held an evidentiary hearing on November 15, 2013, during which testimony was taken from eight (8) witnesses. At a subsequent hearing held on November 22, 2013, the Court announced its decision on all then-pending motions and the issue of permanent injunctive relief. Pursuant to those hearings, a resulting Order was issued, dated and entered on November 25, 2013, and, in pertinent part, it was,

**ORDERED** that Defendants are **PERMANENTLY AND MANDATORILY ENJOINED** to make the following documents available to Plaintiffs for inspection and copying pursuant to V.I. CODE ANN. tit. 3, §§ 881(a)-(c) and V.I. CODE ANN. tit. 18, § 53(a), between the date of this Order and not later than **Friday, December 20, 2013**;

1. The written Sign-In and Sign-Out books for the voters for the November, 2012 General Election for all polling stations in the St. Thomas-St. John District;

2. The E-Poll Sign-In and Sign-Out books for the voters for the November, 2012 General Election for all polling stations in the St. Thomas-St. John District;

3. All Tally Sheets for the November, 2012 General Election in the St. Thomas-St. John District;

4. All absentee and provisional books for the November, 2012 General Election in the St. Thomas-St. John District;

---

[3] The present Supervisor of Elections, Claudette Fawkes, and the present Deputy Supervisor of Elections for the District of St. Thomas and St. John, Nefrediezha Barbel, have been substituted as parties for John Abramson, Jr. and Sharon Benjamin, respectively, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, which applies in this proceeding in accordance with Rule 7 of the Rules of the Superior Court.

[4] The Entry of Default is dated September 9, 2013, but was entered the following day.

5. All paper ballots received from voters for the November, 2012 General Election in the St. Thomas-St. John District; and

6. All correspondence between the officials, agents, and/or employees of the Board of Elections and the programmers and technicians for the electronic voting machines used in the November, 2012 General Election; and it is further

**ORDERED** that, in the course of inspection and copying of the above-described documents, Plaintiffs shall follow all rules and regulations prescribed by the Supervisor of Elections in accordance with V.I. CODE ANN. tit. 18, § 53(b); and it is further

**ORDERED** that this Order shall be binding upon the named and substituted Defendants, the elected members of the Board of Elections for the District of St. Thomas and St. John, and its officers, agents, and employees; and it is further

**ORDERED** that a copy of this Order shall be posted in the office of the Board of Elections for the District of St. Thomas and St. John where all of its elected members, officers, agents, and employees may view the same. . . .[5]

On December 10, 2013, Plaintiff Magras filed with the Court a copy of a letter, dated December 9, 2013, addressed to Defendant Fawkes. On December 10, 2013, Plaintiff Marsh-Monsanto filed with the Court a copy of a letter, dated December 10, 2013, with attachments, addressed to the undersigned. Both missives alleged that Plaintiffs were being forestalled in their attempts to inspect and copy documents as ordered by the Court. Plaintiffs Magras and Marsh-Monsanto also alleged that unidentified persons were destroying documents of the Board and raised other issues which, while germane to the Board generally, were not raised in the initial complaint and, therefore, not ruled upon by the Court at any time in this case. Because no certificate of service was attached to these documents, by Order dated December 13, 2013,[6] the Court directed the Clerk of the Court to serve copies of the apparently *ex parte* letters on all Plaintiffs and counsel for Defendants. On December 23, 2013, the Court received

---

[5] *Monsanto v. St. Thomas-St. John Bd. of Elections*, Case No. ST-13-CV-211 (V.I. Super. Ct. Order filed Nov. 25, 2013) (emphasis in original).

[6] The Order was entered on December 16, 2013.

"Plaintiffs' Motion for Contempt of Court for Defendant's (sic) Failure to Comply with November 25, 2013 Order."

A hearing on the contempt motion was held on January 10, 2014. All Plaintiffs personally appeared and represented themselves. On the other side, only Defendant Nefrediezha Barbel personally appeared, and all Defendants were represented by Assistant Attorney General Ariel M. Smith-Francois, Esquire. At the hearing, the Court heard testimony from Julian Warner and Defendant Barbel. Plaintiffs were offered the opportunity to testify, but all declined. The Court also admitted into evidence Plaintiffs' Exhibits 1 through 3, and Defendants' Exhibits 1, 3, and 4.

The Court determines that both witnesses were credible, and their testimony was more similar than differing. Julian Warner testified that he is a member of a team of individuals, including Plaintiffs, who are conducting a "citizens' audit" of the Board, and, in particular, the November 2012 general election. After the Court issued the November 25, 2013, injunctive Order, Plaintiffs Magras and Mercer, along with Julian Warner and others, went to the Board's office to review documents on Saturday, November 30, 2013. They requested and were provided tally sheets — item 3 on the Court's injunctive Order. Mr. Warner returned to the Board's office to continue his review of the tally sheets on December 2, 3, 5, and 6, 2013. Sometimes he reviewed the documents alone, and at other times he was accompanied by additional members of the citizens' audit team.

On December 5, 2013, while at the Board's office, Mr. Warner, during his review of the tally sheets, heard the office doorbell repeatedly ring. He went to the entrance to see if one of the team members was the person at the door. When he saw that it was a man he did not know, he told a Board employee that someone wanted to gain entrance to the office. At this time, he noticed some employees tearing papers and putting them in a garbage bag. He could not identify what papers were being torn. According to Ms. Barbel, no employees were instructed to destroy any papers, but only to organize the storage room. While some documents may have been placed in a bag or bin, the papers were not disposed of and remain available for review upon request according to Ms. Barbel.

The Board's office was closed from December 10 through 13, 2013, for employee training. Mr. Warner returned to the Board's office on December 17, 18, 19, and 23, 2013. On those days he requested, and was

provided, the sign-in and sign-out sheets described in item 1 of the November 25, 2013, Order. However, Mr. Warner was instructed by Plaintiff Magras not to return to the Board's office after December 20, 2013, because Plaintiffs viewed Defendants as being in contempt of court for not providing copies of all of the documents listed in the Court's Order by that date. It appears that Mr. Warner received this information on December 23, 2013, and he did not return to the Board's office after that date. On December 23, 2013, Defendant Barbel issued a letter to Plaintiff Magras purporting to extend the Court's deadline to January 3, 2014.

## II. LEGAL DISCUSSION.

### a. Legal standards applicable to the contempt of court allegations raised by Plaintiffs' motion.

■ As an initial matter, on the same date as the Court's contempt hearing, the Court received a document titled "Plaintiffs' Concern Regarding Conflicting Language Between Court Ruling and Written Order."[7] Therein, Plaintiffs contended that the Court's November 25, 2013, Order states that Defendants "may" be held in contempt for violating its provisions, while at the November 22, 2013, hearing, the Court orally stated that Defendants "will" be held in contempt for any disobedience. Plaintiffs' characterization of the written and oral declarations of the Court is correct. It appears, however, that Plaintiffs believe that since the Court used the term "will" at the dispositional hearing, Defendants should summarily be found in contempt of Court based solely on their assertions. This position is contrary to established law.

■ ■ Contempt of court comes in various forms. There is direct contempt, where a party interferes with the ability of a court to conduct

---

[7] Plaintiff Mercer executed this document on her own behalf and for Plaintiff Marsh-Monsanto. Plaintiff Magras properly executed the filing on her own behalf. Plaintiff Mercer is reminded that while she may sign documents on her own behalf, because she is not a licensed attorney she may not sign court documents on behalf of other persons. Such actions constitute the unauthorized practice of law which may be investigated and sanctioned by the Supreme Court of the Virgin Islands and/or the Office of the Attorney General. *See* 4 V.I.C. § 443. *See also In re Application of Gonzalez*, 59 V.I. 862, 863-64 (V.I. 2013). Because Plaintiff Mercer had no authority to sign this document on behalf of Plaintiff Marsh-Monsanto, the Court will treat this motion as being filed only by Plaintiffs Mercer and Magras.

its business.[8] A party found to be in direct contempt may be punished summarily without the need for an evidentiary hearing, regardless of whether the contempt is civil or criminal.[9] Contempt can also be indirect, which may be criminal or civil in nature, depending on the objective of the court finding a party in contempt. If the court intends to force a party into complying with a previously-issued order, the contempt is civil.[10] If the tribunal intends to punish the offending party for violating its directives, then the contempt is considered to be criminal.[11] A criminal contempt proceeding requires that the purported offender be accorded all of the constitutional rights appurtenant to any other criminal matter, such as the right to counsel, a speedy and public trial, and, in the appropriate circumstance, a trial by a jury of his or her peers.[12]

■■ A key difference between direct and indirect contempt is that indirect contempt of court cannot be summarily punished.[13] The contempt asserted by Plaintiffs in this case involves an alleged violation of a court order and is dependent upon factual issues which occurred outside of the Court's presence. Consequently, Plaintiffs' allegations articulate an indirect contempt of court.[14] Therefore, regardless of whether the term "will" or "may" is used, the Court was obligated to hold an evidentiary hearing to ascertain whether a violation of the November 25, 2013, Order actually occurred.[15] Thus, Plaintiffs' concern raises a distinction which

---

[8] *In re Rogers*, 56 V.I. 325, 335-36 (V.I. 2012) (citing 14 V.I.C. § 581 and SUPER. CT. R. 138).

[9] *Id.* at 335.

[10] *Id.* (citation omitted).

[11] *Id.* (citation omitted).

[12] *See id.* at 336 n. 23 (citations omitted). *See also United States v. Harris*, 582 F.3d 512, 515 (3d Cir. 2009) (citing *Bloom v. Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968)).

[13] *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 833, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) ("Summary adjudication of indirect contempts is prohibited . . ."). *See also United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996) ("Thus, indirect contempt may never be punished summarily, but rather requires adherence to more normal adversary procedures.") (citations and quotations omitted).

[14] *United States v. Rangolan*, 464 F.3d 321, 326 (2d Cir. 2006) ("Indirect contempts by contrast, generally involve disobedience to court orders, and can occur anywhere. . . .") (citations omitted); *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 146 (3d Cir. 1994) ("Failure to obey a court judgment is an indirect contempt. . . .") (citations omitted).

[15] *United States v. Neal*, 101 F.3d at 997 ("Indirect, or out-of-court, contempt does not occur within the presence of the court and must be proven through the testimony of third parties or the testimony of the contemnor."); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir.

makes no difference under the law based upon the circumstances of this case — the Court may not summarily hold Defendants in contempt of court as Plaintiffs appear to request.

 Moreover, sanctions for contempt of court are not granted as a matter of routine. Rather, such allegations must be supported by competent evidence of a violation of a court's order. The Supreme Court of the Virgin Islands has succinctly described the purpose of indirect civil contempt proceedings and the applicable legal burden placed on the movant.[16]

> [C]ivil contempt proceedings . . . are intended to enforce the rights of private parties, to compel obedience to orders and decrees made to enforce their rights and to give them a remedy to which the court deems them entitled. To prove civil contempt the court must find [by clear and convincing evidence] that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order. Importantly, [a] contempt citation should not be granted if there is ground to doubt the wrongfulness of the defendant's conduct. A person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden. Thus, the resolution of ambiguities ought to favor the party charged with contempt.[17]

 Neither side contends that the November 25, 2013, Order was invalid, or that Defendants lacked knowledge thereof. The only issue which requires contemplation is whether Defendants violated the order based upon clear and convincing evidence. The "clear and convincing evidence" standard falls between the "preponderance of the evidence" and the "beyond a reasonable doubt" paradigms. Thus, "[t]he clear and

---

1995) ("For an indirect contempt, such as a failure to obey a court order, it is appropriate to give notice by an order to show cause and to hold a hearing.") (citations omitted).

[16] At various points throughout this case, Plaintiffs have noted that they are representing themselves and are not trained in the intricacies of the legal process. Nevertheless, the Court must hold them to the same legal standard as any other party, represented or not, on their contempt motion. As the Supreme Court of the Virgin Islands has noted, ". . . self-representation is not a license [excusing compliance] with relevant rules of procedural and substantive law." *Thomas v. Cannonier*, S. Ct. Civ. No. 2007/042, 2009 V.I. Supreme LEXIS 33, *3 (V.I. Apr. 7, 2009) (citations and quotations omitted).

[17] *In re Najawicz*, 52 V.I. 311, 339-40 (V.I. 2009) (all citations and quotations omitted).

52

convincing evidence standard . . . requires evidence sufficient to 'enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue,' although '[i]t is not necessary that the evidence be uncontradicted . . . provided it carries conviction to the mind or carries a clear conviction of its truth.' "[18] Finally, the decision to find a party to be in contempt of court or not is committed to the sound discretion of the trial court.[19] It is upon these legal precepts that the Court determines Plaintiffs' contempt motion.

### b. Plaintiffs have not presented clear and convincing evidence that Defendants violated the November 25, 2013, Court Order by interfering with Plaintiffs' ability to inspect and copy public records.

Plaintiffs filed this action under the Virgin Islands Public Records Act[20] and certain provisions of the Virgin Islands Election Code.[21] The purpose of public records acts are to provide citizens with access to the information on which governmental decisions are made in order to promote transparency and accountability in the governmental process.[22] The November 25, 2013, injunctive order was issued because Plaintiffs established through competent evidence at the November 15, 2013, hearing that the documents they sought were public records under Virgin Islands law, not subject to any exemptions, and Plaintiffs were entitled to inspect and copy those records. In reaching its decision, the Court was guided by the principle that open records acts should be construed broadly

---

[18] *In re Campbell*, 59 V.I. 701, 715 (V.I. 2013) (quoting *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 886 (1986)).

[19] *Walters v. Parrott*, 58 V.I. 391, 406-07 (V.I. 2013); *Messer v. Government, ex rel. Petersen*, 203 F. Supp. 2d 399, 402 (D.V.I. App. Div. 2002), *aff'd*, 69 Fed. Appx. 529 (3d Cir. 2003).

[20] V.I. CODE ANN. tit. 3, § 881 (1995).

[21] 18 V.I.C. § 53 (1998). Plaintiffs' complaint initially only relied upon 3 V.I.C. § 881. However, their subsequent submissions also referred to 18 V.I.C. § 53. Because both statutory provisions cover the same subject matter, one generally applying to all governmental bodies, and the other specifically applicable to the Board of Elections, the Court considers both statutes as they are *in pari materia. See Phillip v. People*, 58 V.I. 569, 590 (V.I. 2013), *cert. denied*, 134 S. Ct. 798, 187 L. Ed. 2d 605 (2013).

[22] *E.g., City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 63 P.3d 1147, 1149 (2003); *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004).

to ensure a citizen's access to public information.[23] Plaintiffs now contend that Defendants did not make the documents listed in said Order available for inspection and copying by December 20, 2013 as directed. In Plaintiffs' view, because they have not viewed or received copies of all the subject documents, Defendants should be held in contempt of court and either fined or imprisoned. Defendants counter that, although Plaintiffs may not have reviewed or copied all of the documents listed in the November 25, 2013, Order, the papers were available for Plaintiffs to inspect and reproduce. Thus, Defendants argue that they have complied with the Court's Order.

 This controversy must be determined by reference to the language of the Court Order. The terms of the order must be clear and the defendant must have notice thereof before indirect contempt can be found.[24] Similar to the canons of statutory construction, when the language contained in a court order is unambiguous, the words used are given effect according to their plain meaning.[25] In the November 25, 2013, Order, Defendants were directed to ". . . make the following documents available to Plaintiffs for inspection and copying pursuant to V.I. CODE ANN. tit. 3, §§ 881(a)-(c) and V.I. CODE ANN. tit. 18, § 53(a). . . ." This phraseology was derived from the words of the cited statutes,[26] and the Court notes that statutes, including, public or open

---

[23] E.g., Gannon v. Bd. of Regents, 692 N.W.2d 31, 38 (Iowa 2005); Farley v. Worley, 215 W. Va. 412, 599 S.E.2d 835, 843 (2004).

[24] E.g., In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008) ("the putative contemnor must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion.") (citation and quotations omitted); Liberte Capital Group, LLC v. Capwill, 462 F.3d 543, 550-51 (6th Cir. 2006) ("This Court requires that the prior order be clear and unambiguous to support a finding of contempt. Ambiguities must be resolved in favor of the party charged with contempt.") (citations and quotations omitted).

[25] See, e.g., Travelers Indem. Co. v. Bailey, 557 U. S. 137, 150, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009) ("where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect.") (citations omitted). See also Payless Cashways, Inc. v. Hill, 139 S.W.3d 793, 795 (Tex. App. 2004).

[26] "Every citizen of this Territory shall have the **right to examine all public records and to copy** such records . . ." 3 V.I.C. § 881(b) (emphasis added). "[T]he records of each board of elections . . . shall be open to public inspection, **and may be inspected and copied** by any qualified elector of the district. . . ." 18 V.I.C. § 53(a) (emphasis added).

54

records acts, are also construed according to their plain language.[27] Without a doubt, the Court Order, and the applicable statutes, directed Defendants to allow Plaintiffs to review the Board's records and to make copies of the same. The Order did not direct Defendants to copy every document which fell into the listed categories. The mechanism providing for Plaintiffs to inspect and copy documents allows them freedom of access to review all public records and ask for copies of those items which they desire, while not imposing on Defendants a requirement to copy documents which are not wanted. In fact, the testimony at the November 15, 2013, and January 10, 2014, hearings demonstrated that Plaintiffs had already inspected and copied several documents, though not all they had requested.

Now, turning to the testimony elicited at the January 10, 2014, contempt hearing, the Court concludes that Plaintiffs did not provide clear and convincing evidence that any of the Defendants failed to make any of the listed documents available to Plaintiffs for inspection and copying. On November 30, and December 2, 3, 5, and 6, 2013, Plaintiffs, themselves or through Mr. Warner, asked to review tally sheets for the November 2012 general election and the documents were provided. On December 17, 18, 19, and 23, 2013, Plaintiffs, again themselves or through Mr. Warner, asked to review sign-in and sign-out books for the November 2012 general election and the documents were provided. There was testimony, through Mr. Warner, that some of the sign-in and sign-out books were either missing pages or had pages stuck together. He also stated that some tally sheets, which are to be in triplicate, did not have all three pages. Defendant Barbel did not contradict Mr. Warner's statements, and there was no cross-examination of her to ascertain why these documents were in such condition. Plaintiffs also contended that there must be additional ". . . correspondence between the officials, agents, and/or employees of the Board of Elections and the programmers and technicians for the electronic voting machines used in the November, 2012 General Election. . . ." However, Defendant Barbel was examined by both sides and testified as to the steps taken to locate such documents.

---

[27] *E.g., Brady v. Government*, 57 V.I. 433, 441 (V.I. 2012) (citations omitted). *See also Lamy v. New Hampshire Pub. Utils. Comm'n*, 152 N.H. 106, 872 A.2d 1006, 1009 (2005) (examining the New Hampshire Right-To-Know Law based upon the plain language of the words used).

These endeavors are also set forth in Defendants' Exhibit 4. Only two (2) documents responsive to this request were discovered through this search, and they were made available to Plaintiffs. While Plaintiffs may have expected to inspect and copy documents that were in better condition, or even uncover additional documents, this does not mean that the Board did not make available the documents it had under its control.[28]

In addition, Plaintiffs did not elicit any testimony that they had requested for inspection prior to December 20, 2013, any e-poll sign-in and sign-out books, absentee or provisional books, or paper ballots. Indeed, the only evidence on these items was Defendant Barbel's testimony that none of these items were requested by Plaintiffs prior to December 20, 2013.[29] Moreover, as noted above, and for reasons not made clear at the contempt hearing, neither Plaintiffs nor any other members of the citizens' audit team returned to the Board's offices after Mr. Warner's visit on December 23, 2013, to inspect or copy any document. Taken together, the testimony reflects that Defendant Barbel, herself or through those whom she supervises, made available any documents requested by Plaintiffs, and other documents simply were not requested. Moreover, there was no testimony that Defendants Caroline Fawkes, Alecia Wells, or Arturo Watlington, Jr., in any way interfered with Plaintiffs' ability to access, inspect, or copy the records of the Board after the November 25, 2013, Order.

---

[28] See Murphy v. Exec. Office for United States Attorney, Civ. Action No. 13-0573(ESH), 2013 U.S. Dist. LEXIS 172149, *8 (D.D.C. Dec. 6, 2013) ("The fact that the released documents may not reflect what plaintiff surmises they should or that a particular document was not found does not demonstrate the inadequacy of a search, or point to evidence sufficient to put the Agency's good faith into doubt.") (citations and quotations omitted).

[29] During her argument, Plaintiff Mercer attempted to rely upon Defendants' Exhibit 2 to support her contention that all documents listed in the November 25, 2013, Order had been requested but not provided by Defendants. However, that document, which is an "examination & copy of records" form completed by Plaintiff Magras on December 6, 2013, seeking all documents listed in the November 25, 2013, Order, was not admitted into evidence. When Defendants moved for its entry into evidence, Plaintiff Marsh-Monsanto objected. The Court declined to admit Defendants' Exhibit 2 into evidence because it was cumulative of Defendants' Exhibit 1. Because Defendants' Exhibit 2 was not admitted into evidence, it cannot be considered by the Court. Additionally, as discussed above, the Order requires Defendants to make the listed documents available for inspection and copying, not to simply re-produce all of said documents. Thus, even if the Court could properly consider Defendants' Exhibit 2, it would not assist Plaintiffs' positions.

### c. Plaintiffs have not shown by clear and convincing evidence that the Board's requirement that persons seeking to review its records must complete forms as part of the document review process constitutes contempt of court.

Plaintiffs argued at the contempt hearing that the Board should be held in contempt of court because it required them, Mr. Warner, or other members of the citizens' audit team to complete sign-in/sign-out sheets and "examination & copy of records" forms. It appears that Plaintiffs suggest that they should be allowed to walk into the Board's office and demand a review of documents at will. This is contrary to the language of the Court's November 25, 2013 Order and Virgin Islands statutes.

The Court specifically directed that ". . . in the course of inspection and copying of the above-described documents, Plaintiffs shall follow all rules and regulations prescribed by the Supervisor of Elections in accordance with V.I. CODE ANN. tit. 18, § 53(b). . . ." The Court placed this proviso in its Order in light of the language of the cited statute which, in part, declares "The public inspection permitted by this section shall only be in the presence of a member or authorized employee of the board, **and shall be subject to proper regulation** for safekeeping of the records and documents, and subject to the further provisions of this title."[30] This Court has already held that the right of citizens to inspect public records is subject to any reasonable rules or policies the pertinent agency may implement,[31] and such verbiage is common in state public records acts.[32] These provisions are necessary because, although the right of the citizenry to access public documents is important, a responding agency must also be able to continue to meet its other statutory mandates.[33]

---

[30] 18 V.I.C. § 53(b) (1998) (emphasis added).

[31] *In re Application for a Court Order Authorizing AT&T to Provide Historical Cell Tower Records*, 55 V.I. 127, 140 (Super. Ct. 2011).

[32] *See Sage Info. Servs. v. Humm*, 2012 IL App (5th) 110580, 977 N.E.2d 895, 899, 364 Ill. Dec. 986 (2012) (citing the Illinois Property Tax Code); *Yourdan v. Brown City Comm. Schs.*, Docket No. 260419, 2006 Mich. App. LEXIS 2908, *1 (Mich. Ct. App. Oct. 3, 2006) (citing the Michigan Freedom of Information Act).

[33] *Citizens Progressive Alliance v. Sw. Water Conservation Dist.*, 97 P.3d 308, 312 (Colo. Ct. App. 2004) (recognizing ". . . the need for a balance between the public's right to inspect public records and the administrative burdens that may be placed on government agencies responding to such requests.").

■ Defendant Barbel testified that the practice is for all persons seeking to review Board documents to complete a request form so the staff knows exactly what is being requested by a citizen. Also, this procedure allows the staff to track which documents have been removed from the storage area and must be returned for safekeeping. No testimony was offered indicating that this procedure unduly interfered with any requester's ability to review Board documents. And, the Court finds this procedure to be reasonable and consistent with Virgin Islands law. Therefore, the imposition of this procedure is not a basis for finding Defendants to be in contempt of court.

### d. Plaintiffs have not demonstrated by clear and convincing evidence that the December 23, 2013, letter from Defendant Barbel to Plaintiff Magras constitutes contempt of court.

Plaintiffs all argued at the contempt hearing that a letter penned by Defendant Barbel to Plaintiff Magras constituted a violation of the November 25, 2013, Court Order and should be punished via contempt sanctions. That letter purports to grant Plaintiffs additional time to complete their inspection and copying of the Board's documents listed in the Order. The Court determines that the letter is based on a misguided view of its Order, but is not a basis for holding Defendant Barbel in contempt.

As noted above, the Order directs Defendants to make the listed documents available for inspection and copying by December 20, 2013. However, at the November 22, 2013, adjudicatory hearing, the Court specifically noted that it was possible that the review period could extend past that date. When discussing the deadline date with the parties, the Court made it clear that December 20, 2013, was the deadline by which Defendants had to make the listed documents available, and not a limit on the amount of time Plaintiffs had to copy the documents. The partial transcript previously requested by one of the parties contains the pertinent dialogue.

> THE COURT: The whole process should be completed by December 20th.
>
> ATTORNEY SMITH-FRANCOIS: Well, completed.
>
> THE COURT: Yes.
>
> MS. (sic) SMITH-FRANCOIS: Okay. All right, completed means they're completed reviewing the documents.

58

THE COURT: That means you have to make them available.

ATTORNEY SMITH-FRANCOIS: That's fine.

THE COURT: Now if they haven't finished copying — I don't know how voluminous this stuff is. If it takes longer, it takes longer. But certainly by that date everything should be made available.

ATTORNEY SMITH-FRANCOIS: So, what you're saying is that they have to be made available and completed by them on December 20th.

THE COURT: No. If it takes them longer to copy everything that's fine. I'm not enjoining them. I'm enjoining the Board to make sure that everything has been produced by at least, at the very least December 20th.[34]

■ The foregoing excerpt reinforces what the Court stated above — that the Board's obligation was to make the documents available for inspection and copying by December 20, 2013. It further emphasizes that Plaintiffs have as long as is required to complete their inspection and copying of those records. Indeed, because the documents are public records, Plaintiffs, and any other elector and citizen, have the continuing right to inspect and copy these documents during the regular business hours of the Board. To the extent that Defendant Barbel's letter places an end date after which Plaintiff may no longer review the documents, the missive is misguided. But, Defendant Barbel did testify that the reason she wrote the letter was that she was aware that Plaintiffs had not completed their review of the documents, and she desired to give them more time to do so. The Court views this position as attempting to further the review process and not to hinder it. Therefore, I cannot view this correspondence as clear and convincing evidence which supports a finding of contempt of court.

### e. Plaintiffs' motion to compel the production of the investigation and reporting of election irregularities filed on January 10, 2014, will be denied.

On the day of the contempt hearing, the Court received "Plaintiffs' Motion to Compel Defendants and Opposing Counsel to Produce Evidence of Investigation and Reporting of Election Irregularities for

---

[34] Transcript of November 22 2013, Hearing at pp. 30-31.

Prosecution."[35] Plaintiff Mercer cites to various provisions of the Virgin Islands Election Code, Mr. Warner's previously-filed affidavit, and the audit report of the Election Assistance Commission. She then suggests that there are certain "irregularities" and "suspicious circumstances" which Defendants and their counsel should be required to produce. As of today, Defendants have not responded to this motion.

 A review of the complaint reflects that the issues raised in this motion were not previously pleaded by Plaintiffs. Pleadings play a crucial role in the litigation process, as they provide an opponent with notice of the claims raised so that the party may prepare to defend against them at trial.[36] In this instance, Plaintiff Mercer seeks the production of documents that were not pleaded in the complaint, nor were these documents part of the evidentiary hearing of November 15, 2013, and ensuing Order of November 25, 2013. Rather, this request was made just hours before the contempt hearing. It is inappropriate for the Court to compel Defendants to produce newly-identified documents in the context of this litigation at what is the equivalent of a post-judgment stage.[37]

In addition, the newly requested documents are not relevant to the issue presently before the Court, to wit, whether Defendants are in contempt of court for failing to comply with the November 25, 2013 Order. This is not to suggest that these documents, if they exist, are not subject to disclosure under the Public Records Act and the Election Code. However, they are

---

[35] Plaintiff Mercer executed this document not only on her own behalf, but also purportedly for Plaintiff Marsh-Monsanto. For the same reasons set forth in footnote 7 above, Plaintiff Mercer lacked any legal authorization to do so. Since her signature for Plaintiff Marsh-Monsanto is a nullity, and Plaintiff Magras did not sign this submission, the Court will treat it as being filed only by Plaintiff Mercer.

[36] *George v. Wenhaven, Inc.*, Case No. ST-12-CV-34, 2012 V.I. LEXIS 66 (V.I. Super. Ct. Sept. 29, 2012) (citations omitted). *See also Birchard v. City of New Britain*, 103 Conn. App. 79, 927 A.2d 985 (2007) ("Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise.") (citation and quotation omitted); *Smith v. City of St. Louis*, 395 S.W.3d 20, 24 (Mo. 2013) ("The purpose of a pleading is to limit and define the issues to be tried in a case and [to] put the adversary on notice thereof.") (citation omitted).

[37] *See Falkenberg Capital Corp. v. Dakota Cellular, Inc.*, 925 F. Supp. 231, 243 (D. Del. 1996) (It is inappropriate to raise new issues in a post-judgment motion); *In re Full Gospel Assembly of Delray Beach*, 371 B.R. 559, 564 (Bankr. S.D. Fla. 2007) ("Modem pleading requirements serve to notify the opposing party of the claims alleged and prevent unfair surprise. Raising entitlement to attorneys fees only after judgment fails to serve either of these objectives.") (citation omitted).

not part of this particular litigation, and it is improper for the Court to expand the scope of this case at this stage of the proceedings. Therefore, Plaintiff Mercer's motion will be denied.

### f. Plaintiffs' motion for an additional opportunity to question Defendants and compel their appearance filed on January 16, 2014, will be denied.

On January 16, 2014, the Court received a "Motion to Compel Production" purportedly filed by all Plaintiffs.[38] Plaintiffs Magras and Mercer suggest that the absence of Defendants Wells, Fawkes, and Watlington from the contempt hearing of January 10, 2014, deprived them of due process because they were unable to question said Defendants. Plaintiffs Mercer and Magras also attach to their motion certain documents which purport to demonstrate that Defendants Wells, Watlington, and Fawkes were, or may have been, in the U.S. Virgin Islands on January 10, 2014. Also attached to the present motion are re-submissions of previously submitted documents. Defendants oppose this motion, averring that the claims of due process violations are unsupported by any facts, and they seek to strike the motion because it is both baseless and scandalous.

 Under the procedural rules adopted by this Court, a pleading, or any portion thereof, may be stricken where the subject matter is ". . . redundant, immaterial, impertinent, or scandalous. . . ."[39] However, simply reciting one or more of these terms does not justify striking the challenged language or document.[40] Rather, the movant must clearly demonstrate that it will suffer prejudice if the item is not removed from the record.[41] More importantly, by its own explicit terms Rule 12(f) only

---

[38] This document was executed by Plaintiff Diane Magras for herself and on behalf of Plaintiff Marsh-Monsanto. Plaintiff Mercer properly signed this motion on her own behalf. However, for the same reasons stated in footnote 7 above, Plaintiff Magras is reminded that she has no authority to sign any documents on behalf of anyone other than herself. In view of Plaintiff Magras' lack of legal authority to sign this motion for Plaintiff Marsh-Monsanto, the Court will construe this motion as being filed only by Plaintiffs Magras and Mercer.

[39] SUPER. CT. R. 7; FED. R. CIV. P. 12(f).

[40] *Merchants Commercial Bank v. Tillett*, 55 V.I. 121, 123-24 (Super. Ct. 2011) (citations omitted).

[41] *Matos v. Nextran, Inc.*, 52 V.I. 676, 691 (D.V.I. 2009) (citations omitted).

applies to pleadings.[42] The document Defendants now challenge is not a pleading, which term includes only "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."[43] In the present case, Defendants seek to strike a motion, and Rule 12(f) does not apply to such filings.[44] Therefore, their motion to strike Plaintiffs Magras' and Mercer's motion to compel will be denied.

██ However, the Court will also deny Plaintiffs Magras' and Mercer's instant motion. In the attachments to the motion, these Plaintiffs suggest that Defendants' attorney committed perjury. This assertion is inaccurate. Perjury occurs when a party who is placed under oath at a hearing willfully and knowingly makes a false statement.[45] However, at no time was Defendants' attorney under oath, nor is there sufficient evidence that she made any false statements, much less knowingly and willfully. Therefore, unquestionably, Defendants counsel did not commit perjury.

 Plaintiff Mercer also submits a letter and an affidavit in which she states that Defendants' counsel advised the Court that Defendant Fawkes, Wells, and Watlington all were off-island, but Plaintiff Mercer was subsequently made aware that Defendant Wells was in the U.S. Virgin Islands. The Court's recollection is that counsel advised that Defendant Fawkes was not on-island, but no specific representations were made as to the other Defendants. Moreover, Plaintiff Mercer does not provide a copy of any transcript to support her allegation. As to Defendants Fawkes and Watlington, Plaintiff Mercer merely speculates that they were actually within the Territory, available for the hearing, and insinuates that their absence was improperly engineered. However, it is obvious from the language of the affidavit and letter that the information asserted by Plaintiff Mercer is not based on personal knowledge as

---

[42] FED. R. CIV. P. 12(f) ("The court may strike from a **pleading** . . .") (emphasis added).

[43] FED. R. CIV. P. 7(a).

[44] E.g., *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule [12(f)], only pleadings are subject to motions to strike."); *Bond v. ATSI/Jacksonville Job Corps Center*, 811 F. Supp. 2d 417, 421 (D.D.C. 2011) ("A motion to strike a motion is therefore not proper under Rule 12(f).") (citation omitted).

[45] See 14 V.I.C. § 1541 (2012) (defining the criminal charge of perjury under Virgin Islands law). See also 60a AM. JUR. 2D *Perjury* § 6 (2d ed. Database Updated Nov. 2013).

generally required,[46] but was obtained from unidentified third parties. In the absence of some indicia about the persons from whom this material was garnered, the Court cannot find that such statements are reliable and suitable for use in this litigation.[47]

In addition, in civil litigation there is no requirement that a party personally appear for a hearing or trial unless subpoenaed or ordered to be physically present.[48] Plaintiffs did not subpoena any of the absent Defendants to appear at the January 10, 2014 hearing, and the Court did not expressly direct them to appear. Further, the testimony elicited at the hearing from Plaintiffs' witnesses did not even remotely imply that Defendants Wells, Watlington, or Fawkes took any steps to impede Plaintiffs' review of the Board's records at any time after the November 25, 2013 Order. The present motion also lacks a proffer of what additional information would be revealed from another hearing and questioning of these Defendants. For all of these reasons, the Motion to Compel Production will be denied.

## III. CONCLUSION.

Based on the foregoing discussion and precedents, the Court does not find that any of the Defendants impeded or attempted to interfere with the November 25, 2013 Order. Therefore, Plaintiffs' request to hold said Defendants in contempt of court will be denied in an appropriate order of even date. In addition, said order will also deny the Plaintiffs' Motion to Compel Defendants and Opposing Counsel to Produce Evidence of

---

[46] *See Joseph v. Hess Oil Virgin Islands Corp.*, 54 V.I. 657, 661 n. 1 (V.I. 2011) (noting that affidavits must be based on personal knowledge) (citing FED. R. CIV. P. 56(e)(1)); SUPER. CT. R. 48(a) (noting that affidavits submitted in support of a motion for default judgment must be based on personal knowledge).

[47] *See Williams v. People*, 53 V.I. 514, 527-33 (V.I. 2010) (declaring that the trial court must ascertain whether hearsay in an affidavit is reliable before using that evidence in a detention hearing). *See also In re Sullivan*, 185 Misc. 2d 39, 710 N.Y.S. 2d 853, 858 (Sup. Ct. 2000) ("An affirmation, to be sufficient, must be made upon personal knowledge or upon information and belief in which event the source of the information and the grounds for the belief must be provided.").

[48] *In re Estate of Coutermarsh*, 325 Ga. App. 288, 752 S.E.2d 448 (2013) ("Absent a properly served subpoena or court order requiring a party to appear in person, a party "may choose not to be present at the trial of the case and to be represented solely by counsel."); *Meslat v. Amster-Kirtz Co.*, 2008 Ohio 4058 (Ohio Ct. App. 2008) ("... there is no requirement in the Civil Rules or elsewhere requiring a party to attend a hearing unless ordered to do so.").

Investigation and Reporting of Election Irregularities for Prosecution and their Motion to Compel Production. Inasmuch as Defendants have made the documents listed in the November 25, 2013 Order available for inspection and copying, there is no further reason to keep this case on the active docket. Therefore, the Clerk of the Court will be directed to close this case.[49]

---

[49] Although the Court will remove this matter from its active docket, the Board is reminded that this tribunal retains continuing jurisdiction to enforce the permanent injunction. *See McCall-Bey v. Franzen,* 777 F.2d 1178, 1183 (7th Cir. 1985) ("When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings.") (citations omitted); *Spring Mills, Inc. v. Ultracashmere House, Ltd.,* 724 F.2d 352, 356 (2d Cir. 1983) ("Further, short of modifying the injunction, the district court, of course, has a continuing obligation of enforcing the injunctive order by the power of contempt, if necessary."). Therefore, as noted in the discussion above, Plaintiffs have the right under Virgin Islands law and the November 25, 2013, Order, to continue their review of the public records of the Board.