IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
July 17, 2025 11:27 AM
ST-2024-CR-00348
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

PEOPLE OF THE VIRGIN ISLANDS, )
)
Plaintiff, )
) **CASE NO. ST-2024-CR-00348**
vs. )
) **Cite as 2025 V.I. Super 23U**
)
MARVIN STANCLIFFE, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

¶ 1 **THIS MATTER** is before the Court on Defendant's Motion to Suppress filed on May 16, 2025. Defendant seeks to suppress all evidence recovered after Virgin Islands Police officers searched a vehicle in which Defendant was a passenger. The People filed their opposition response on May 30, 2025. On June 26, 2025, this Court held a Suppression Hearing. Based on the evidence presented at the hearing and the parties' submissions, the Court will deny Defendant's Motion to Suppress.

## 1. FACTUAL BACKGROUND

¶ 2 On May 3, 2022, members of the Virgin Islands Police Department Special Operations Bureau conducted traffic enforcement on Kronprindsens Gade near the Benji Car Wash and the Virgin Islands Department of Labor. The officers involved in this traffic stop included Officer Velazquez, Officer Chelston Richardson, Officer Joel Browne Connors, and Officer Asenee Flaharty. During the hearing, Officer Velazquez testified that on May 3, 2022, he was a team leader with the Special Operations Bureau, and he and his team were assigned to perform traffic enforcement in the area. Officers Richardson and Connors initiated a traffic stop on a blue Saturn Outlook owned and driven by Janelle Walters ("Walters") near Benji Car Wash, across from a

daycare less than a hundred feet away. The defendant, Marvin Stancliffe ("Stancliffe"), was a passenger in the vehicle. The vehicle was stopped because it had only one functioning headlight and no license plate on the front bumper, both of which are violations under Virgin Islands law.[1]

¶ 3    When Walters, the driver of the vehicle, and Stancliffe, the front passenger, rolled down the vehicle's windows, the officers immediately detected a strong odor of marijuana smoke. Officer Velazquez testified that he was standing at the rear of the vehicle, less than six feet away from the windows, when Officers Richardson and Connors approached the Saturn Outlook. He noted that he could smell a strong odor of marijuana emanating from the vehicle as soon as the windows were rolled down. Officer Velazquez explained that he recognized the smell because he had conducted numerous investigations into the sale, use, and distribution of marijuana. He had served on the High Intensity Drug Trafficking Areas (HIDTA) task force for two years and had made many arrests related to marijuana offenses. Officer Connors also testified that he smelled an odor of marijuana coming from the vehicle.

¶ 4    Officer Connors approached the vehicle on the passenger side, while Officer Richardson approached from the driver's side. Officer Richardson requested the documents for the vehicle and

---

[1] Title 20 V.I.C. § 463(a) provides, in pertinent part, that:

  (a) Every automobile operated within the time from one-half hour after sunset to one-half hour before sunrise shall display at least two white lights and every motorcycle one white light clearly visible at least 250 feet in front of such vehicle. The use of dazzling lights in well-lighted streets or public highways is prohibited; provided, that any person operating a vehicle on which one of the lights has ceased to function may proceed to operate the car only for such time thereafter as is necessary to take the vehicle to his home or a place of repair. In no event shall any vehicle proceed with only the parking lights illuminated.

And 20 V.I.C. § 344(a) provides, in relevant part, that:

  (a) License plates shall be of the type prescribed by the Director of Motor Vehicles and shall bear the distinctive license numbers or personalized license assigned under the provisions of section 332 of this title. License plates shall be effective for a license year expiring on the last business day of the month issued. When two plates are issued, two plates shall be displayed. One plate must be affixed to the front of the body of the vehicle and the other to the rear, and both plates must be clearly visible from the front and rear of the vehicle.

explained the reason for the stop. The officers asked both the driver and the passenger to exit the vehicle. Walters and Stancliffe were asked if there was any marijuana in the vehicle. Walters admitted she had two small bags of marijuana in her purse in the back seat of the vehicle. The occupants were patted down for the officers' safety. Officer Flaharty patted down Walters, and Stancliffe moved to the driver's side of the vehicle, away from traffic, where Officer Connors patted him down. Connors stayed with Stancliffe as Officer Richardson searched the vehicle. Connors testified that Stancliffe kept insisting he needed to go to the bathroom. Connors told him to "hang tight."

¶ 5    During the search, Officer Richardson searched Walter's purse and found the marijuana. He then continued searching the vehicle and made his way to the passenger side. There, he saw an AR-15 rifle on the floor of the front passenger side. As soon as the rifle was found, Officer Richardson yelled, "Gun!" When he shouted, "Gun!" Stancliffe ran from the scene of the traffic stop. He ran in a southeasterly direction between the fence lines of Emile Griffith Ballpark and the car wash, then toward the rear of the Windward Passage hotel. Officers Connors, Velazquez, and Flaharty chased after Stancliffe, following his direct path. Connors, who led the chase, testified that he yelled for Stancliffe to stop, and when he didn't, he deployed his taser. The taser's prongs struck Stancliffe, but they did not attach as he was running. When the taser prongs struck him, Stancliffe tripped, yelled, "ahhh," and continued running. During the chase, Stancliffe stopped, turned toward Connors, made a hand gesture, pulled something from his waist, and threw it against the fence. Connors testified that he heard a "cling" sound when the object hit the fence. Connors instructed Stancliffe to stop, raise his hands, and get to the ground. Stancliffe complied. Velazquez and Flaharty followed close behind. Velazquez testified that he saw Connors with his gun drawn at the low ready position and Stancliffe on the ground. Officer Flaharty then handcuffed Stancliffe.

Connors made an inspection of the area close to the fence where he heard the "cling" sound and saw a Glock 17 firearm and a black polymer holster on the ground. The Glock 17 was less than ten feet from where Stancliffe lay face down. Forensic units arrived, took photographs, and, with Velazquez's help, secured the Glock.

¶ 6    The rest of the vehicle was searched. A black and red backpack was found on the floor of the front passenger side of the vehicle. The backpack contained 30 mg amphetamine Dextroamphetamine pills, thirty-eight small, clear resealable bags containing cocaine, two Glock 9mm magazines, and six .233 rifle ammunition rounds. Stancliffe was subsequently charged in an eleven-count information with unauthorized possession of a firearm within one thousand feet of a school in violation of 14 V.I.C.§ 2253(f); unauthorized possession of a machine gun in violation of 14 V.I.C.§ 2253(b); unauthorized possession of a firearm in violation of 14 V.I.C.§ 2253(a); two counts of unauthorized possession of ammunition in violation of 14 V.I.C.§ 2256(3); unauthorized possession of a controlled substance with intent to distribute within one thousand feet of a school in violation of 19 V.I.C.§ 604(b)(1)(A)(5)(a); two counts of unauthorized possession of cocaine in violation of 19 V.I.C.§ 607(a); escape from custody in violation of 14 V.I.C.§ 661(1); interfering with an officer in violation of 14 V.I.C.§ 1508(a); and reckless endangerment in the first degree in violation of 14 V.I.C.§ 625(a).

## 2.    **DISCUSSION**

¶ 7    In his motion to suppress, Stancliffe argues that there was no valid basis for the traffic stop, the search of the vehicle was unconstitutional, and the evidence obtained during the illegal search should be suppressed. During the suppression hearing, Stancliffe's counsel clarified that Stancliffe was not questioning the validity of the traffic stop. Instead, his contention is that Officer Richardson's continued search of the vehicle after marijuana was found in Walters's purse was

unconstitutional because the search was based on the odor of marijuana smoke. The Court will therefore disregard the Defendant's argument regarding the validity of the traffic stop and focus on the search that occurred after Walters' purse was searched. The People contend that the search was constitutional, and even if it wasn't, Stancliffe has no standing to challenge the validity of the search since it was not his vehicle, he has no expectation of privacy in the vehicle, and he abandoned his property when he ran toward the Windward Passage Hotel and away from the traffic stop and police.[2]

¶ 8     Under the Fourth Amendment, people have the right to be free from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const. amend. IV. *People of the V.I. v. Thomas*, 2025 VI 9, P21, 2025 V.I. Supreme LEXIS 8, *17, 2025 LX 54032, 2025 WL 783171 (V.I. 2025). Pursuant to Section 3 of the Revised Organic Act of 1954, as amended, the Fourth Amendment to the U.S. Constitution applies to the Virgin Islands. *See* 48 U.S.C.A. § 1561; *Heath v. People of the Virgin Islands*, 78 V.I. 990, 1002, (V.I. 2024). A defendant seeking to suppress evidence bears the burden of establishing that his Fourth Amendment rights were violated by an unlawful search and seizure. However, when a search and seizure is conducted without a warrant, the prosecution must prove that there is a recognized exception to the warrant requirement. *People of the V.I. v. Stevens*, 2018 V.I. LEXIS 70, *6 (V.I. Super. Ct. 2018). Concerning the issue of standing to challenge the constitutionality of the search, the defendant asserting a violation of his Fourth Amendment bears the burden of proving that he had a legitimate expectation of privacy in the area searched. *People v. Linares*, 2015 V.I. LEXIS 182, *5-6 (V.I.

---

[2] The People raised other arguments. Since Defendant narrowed the scope of his challenge at the hearing, the Court will not address those arguments.

Super. Ct. 2015) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980)).

### (A) Standing

¶ 9    First, the Court must determine whether Stancliffe has standing to challenge the search. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). A Fourth Amendment interest in a place to be searched only exists when the defendant has a legitimate expectation of privacy in the place searched. *People of the Virgin Islands v. Martin*, 2019 V.I. LEXIS 148, *20 (V.I. Super. Ct. 2019) ("Fourth Amendment protections extend only to a person's reasonable expectation of privacy.") (citing *United States v. Jones*, 569 U.S. 400, 404-05 (2012)); *Rakas et al. v. Illinois*, 439 U.S. 128, 144 (1978). To challenge a search under the Fourth Amendment, a person must have a cognizable Fourth Amendment interest in the place searched; otherwise, he lacks standing. A defendant establishes standing by demonstrating a legitimate, personal expectation of privacy in the place searched. *Martin*, 2019 V.I. LEXIS 148 at *21.

¶ 10    Passengers may challenge the traffic stop of the vehicle they are traveling in. *See United States v. Mosley*, 454 F.3d 249, 251 (3d Cir. 2006) ("[W]hen a vehicle is illegally stopped by the police, no evidence found during the stop may be used by the government against any occupant of the vehicle"). However, when passengers do not challenge the stop or if the initial traffic stop was supported by reasonable suspicion or probable cause, they generally lack standing to challenge the search because "passengers in cars, unlike owners or licensees, have no reasonable expectation of privacy in the interior of the vehicle in which they are riding." *Mosley*, 454 F.3d at 252; *U.S. v. Baker*, 221 F.3d 438, 441-42 (3rd Cir. 2000) (stating that a passenger in a vehicle that neither owns nor leases the vehicle, generally has no standing to challenge the search of the vehicle). Passengers

are generally held to lack standing to object to evidence discovered during the search of a vehicle because the Fourth Amendment's protection against unreasonable searches is premised on the government's intrusion on a person's reasonable expectation of privacy. "Fourth Amendment rights are personal rights, and a search of a car does not implicate the rights of non-owner passengers: the car is treated conceptually like a large piece of clothing worn by the driver." *Mosley, 454 F. 3d* at 253. Thus, "a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. 128 at 134. A passenger with no property or possessory interest in a vehicle or the items seized from it lacks standing to challenge the validity of the search or seek to suppress the items obtained through the search, because they do not have a reasonable expectation of privacy in someone else's vehicle. *Id.* at 148.

¶ 11    *Rakas v. Illinois, supra*, is instructive. It involved defendants who were convicted of armed robbery. At the trial, the prosecution offered into evidence a sawed-off rifle and shells that were seized by police during a search of the automobile in which the defendants were passengers. The rifle was found under the seat, and the shells were found in the glove compartment. The defendants did not own the vehicle, and they did not claim ownership of the rifle or shells seized. Before trial, petitioners moved to suppress the rifle and shells seized from the car on the ground that the search violated the Fourth and Fourteenth Amendments. The trial court held that the defendants lacked standing and denied the motion to suppress the evidence. The Supreme Court of the United States affirmed the convictions and determined that the evidence resulting from the search of the car should not be suppressed. *Id.* at 129 -132.

¶ 12    In this case, Stancliffe was a passenger in the vehicle. He does not claim that he has any property or possessory interest in the vehicle. He also does not claim that he is the owner of the AR-15 rifle, or the black and red backpack, and its contents, which were found on the floor on the front passenger side of the vehicle. Furthermore, he does not argue that he has a reasonable expectation of privacy in the black and red backpack. Therefore, he lacks standing to challenge the validity of the search because he did not have a reasonable expectation of privacy in another person's vehicle. *See U.S. v. Mosley*, 454 F.3d 249, 253 (3rd Cir. 2006) (stating that, while passengers may challenge the validity of a seizure, they generally lack "standing" to object to evidence discovered in a search of a vehicle because they have no expectation of privacy). As in *Rakas*, Stancliffe has not "asserted a property nor a possessory interest in the automobile, nor an interest in the property seized." *Rakas*, 439 U.S. at 148. Since Defendant only challenges the validity of the search, his motion to suppress the AR-15 rifle and items in the black and red backpack found on the floor of the front passenger side of Walter's vehicle will be denied. *See also, People of the V.I. v. Hedrington*, 2014 V.I. LEXIS 4, *1 (V.I. Super Ct. 2014) (noting that the passenger lacked standing to object to the search since he was a passenger in the vehicle and not the driver); *United States v. Lewis*, 711 F. Supp. 3d 444, 459–60 (E.D. Pa. 2024) (finding that since the officer had reasonable suspicion to stop the Jeep and the defendants were passengers occupying the Jeep that they do not own, they had no legitimate expectation of privacy in the Jeep and no standing to challenge the seizure of the phones found on the floorboard). Since Stancliffe lacks standing to contest the police officers' search of the vehicle, the Court need not address the legality of the search. *People v. Linares*, 2015 V.I. LEXIS 182, *8 (V.I. Super. Ct. 2015).

### (B) Abandonment

¶ 13    The People also argued that Stancliffe abandoned the AR-15 rifle and the black and red backpack found on the floor of the front passenger side of the vehicle when he fled the scene of the traffic stop after Officer Richardson shouted "Gun!" Abandonment occurs when a person relinquishes their reasonable expectation of privacy in an item or object. The Fourth Amendment is not implicated when the government takes possession of abandoned property. *United States v. Manigault*, 2024 U.S. App. LEXIS 24435, at *10 (3d Cir. 2024) (citing *Abel v. United States*, 362 U.S. 217, 241 (1960)). If an item has been abandoned, neither probable cause nor a warrant is necessary to justify its seizure. *Manigault*, 2024 U.S. App. LEXIS 24435 at *11. When Stancliffe — a mere passenger with no legitimate expectation of privacy or property interest in the Saturn Outlook — fled from the scene of the traffic stop, he clearly demonstrated an intent to abandon any items he may have had in the vehicle. *See e.g., United States v. Beasley*, 2024 U.S. Dist. LEXIS 191472, *18 (W.D. Pa. Oct. 22, 2024) (denying motion to suppress and finding that the defendant abandoned his cell phone, rental car, wallet, and identification, when he ran away from his rented vehicle, entered another vehicle, and drove off the rental car lot). Because Stancliffe voluntarily and intentionally abandoned the items in the vehicle when he fled the scene of the traffic stop, he cannot now seek to suppress them.

¶ 14    Additionally, Defendant seeks to suppress the Glock 17 he allegedly threw against the fence while Connors was pursuing him in the area of the Windward Passage Hotel. Stancliffe has failed to present any valid reason for suppressing the Glock 17. Stancliffe is not contesting the legality of the traffic stop, nor has he claimed ownership of the Glock 17.[3] If Stancliffe was the

---

[3] During the hearing, Stancliffe suggests that the Glock 17 may have been placed at that location by an unknown person, not him.

previous owner, the firearm was abandoned by him; therefore, his motion to suppress the Glock 17 must be denied. Courts have repeatedly held that voluntarily discarding property during flight constitutes abandonment of the property. In *California v. Hodari D.*, the Supreme Court upheld the warrantless seizure of narcotics discarded by a defendant while fleeing from the police, reasoning that the suspect forfeited his privacy interest in the item by abandoning it. 499 U.S. 621, 629 (1991); see also *United States v. Johnson*, 432 F. App'x 118, 121 (3d Cir. 2011) (finding no Fourth Amendment violation and denying motion to suppress where defendant fleeing from police officer ran down alley and abandoned a pistol in the alley). Stancliffe's act of allegedly throwing the Glock 17 and holster in the nearby gut while being chased by police officers constitutes abandonment under Fourth Amendment standards.

### 3. **CONCLUSION**

¶ 15 Stancliffe was a passenger in a vehicle and does not claim ownership of the vehicle or the items found in it, including an AR-15 rifle and the backpack. He lacks standing to challenge the search as he had no reasonable expectation of privacy in someone else's vehicle. Since he is only contesting the constitutionality of the search, his motion to suppress the seized items will be denied. He also does not claim ownership of the Glock 17, and even if he did, he abandoned the firearm when he threw it away while fleeing from the police. Accordingly, it is hereby:

**ORDERED** that the Defendant's Motion to Suppress is **DENIED**; and it is further

**ORDERED** that copies of this Order shall be served on the Defendant, with copies directed to ZARIJE ASANI, ESQ., Territorial Public Defender at the Office of the Territorial Public Defender, and LETHEAL N. JOHNSON, ESQ., Assistant Attorney General at the U.S. Virgin Islands Department of Justice.

Dated: **July 17, 2025**

**Hon. Carol Thomas-Jacobs**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor _7_ / _17_ / _2025_